# DECISIONS

OF THE

# TERM HELD AT MARIANNA, 1853.

JOEL CONKLIN AND JAMES SMITH, PARTNERS, &C., AS CONK-
LIN & SMITH, APPELLANTS, VS. MANUEL GOLDSMITH, EM-
ANUEL FORCHEIMER AND SIMON FORCHEIMER, PARTNERS,
&C., AS GOLDSMITH, FORCHEIMER & CO., APPELLEES.

A bond executed and filed, on obtaining a writ of attachment, by the *agent* of
the plaintiff, in his character as agent, and professing to bind himself and not
his principal, is a substantial compliance with the requisitions of the statute;
provided the bond be also executed by two good and sufficient sureties.

Appeal from the Circuit Court for Santa Rosa County.

On the 10th day of February, 1853, Moses W. Garrison,
agent for the appellants, applied to and obtained from the
Clerk of the Circuit Court for Santa Rosa County, at the
instance and in the name and for the use of the appellants,
against the appellees, a writ of attachment, returnable to
the next term of the Circuit Court for said County.

The bond required to be executed by the statute of this
State in all cases of attachment was executed by Garrison,
the agent, in his own name, binding himself and not his
principals.

The appellees (defendants below) at the ensuing term of
the Court, moved to dissolve the attachment on the ground
that " the bond executed by Garrison is his individual
bond and not the bond of Conklin & Smith, and therefore

the writ of attachment has issued without a bond as requi-
red by the statute in such case made and provided." The
Court below sustained the objection thus taken by the de-
fendants and ordered the writ of attachment to be quashed,
from which the appellants took an appeal.

*Hawkins*, for appellants.

*Campbell*, for appellees.

SEMMES, J.:

This was an attachment suit brought by appellants
against the Respondents.

The attachment bond was signed by Moses W. Garrison
as agent, binding himself and not his principals, Conklin
& Smith.

Upon motion, the Court below quashed the attachment,
because the bond was not given in the name of the princi-
pals, and the question for our consideration is, whether this
was necessary to the validity of the writ? We confess the
point is not free from embarrassment. The whole difficul-
ty arises out of the peculiar phraseology of the statute,
which to say the least, renders the intention of the legisla-
ture as to the mode in which the bond should be executed,
somewhat doubtful. The words of the statute are, that
" before the issuing of any writ of attachment, the party
applying for the same shall by himself, his agent or attor-
ney, enter into bond with two or more good and sufficient
securities," &c.

However important it is to give significance and effect
to every word, clause and sentence in a statute, yet less
regard is to be paid to the words used than the policy
which dictates the act. Broome Leg. Max., 440. And there-
fore where the language used is doubtful, or susceptible of
two meanings, that which will better advance the remedy
and is more consistent with the intention of the Legisla-

36

ture, should prevail; and it is thus the object of the law becomes one of the surest guides to its proper exposition. Notwithstanding the truth of this principle, and its application as a general rule, in the construction of the statutes, yet if the mode in which the bond should be executed in this case was clearly defined by the statute, the argument drawn from the *general* purpose and policy of the law, would be entitled to but little weight in determining the question before us. For, though the policy of the attachment law was to facilitate the collection of debts by giving an additional remedy to the creditor, yet the main object of that part of the statute before us, was to protect the debtor from an improper use of this remedy, by requiring two good and sufficient securities to the bond. This object can as well be accomplished where the agent executes the bond in his own name as in the name of his principal. A very familiar rule in the construction of the statute, and one we think much more applicable to this case is, that the different parts of the statute should be so construed with reference to each other, that effect may if possible, be given to the whole act, and to this purpose the words should receive their ordinary meaning, and be prevented if possible, from becoming superfluous, void or insignificant.

If, as is contended by respondent's counsel, the bond should be executed in the name of the principal, the question may well be asked as to the meaning to be given to the words " agent or attorney," or whence the necessity of using them at all? The principal being required to give a bond " by himself," it was but an idle ceremony in lieu of this, to authorize him to give the bond " by his agent." For what he does through his agent, in contemplation of law, he does himself. Why therefore clothe him with a power which he had at common law, above and independent of the grant in the statute? Besides the word *attor-*

*ney* is evidently used in contradistinction to the word *agent*. If the agent was required to execute the bond in the principal's name, as is insisted on, he must of necessity be an attorney in fact; otherwise, he could not bind the principal. But it could not have been contemplated in the use of the word *attorney*, to imply he should be one *in fact*, but an attorney *at law*, unless we conceive the folly that after the word *agent*, the Legislature should have seen the necessity of using the relative term, conveying the same identical idea. If the word *attorney* does not mean one *at law*, then it must be rejected as superfluous and unmeaning. The absurdity then seems manifest, that the party applying for the attachment is required to give a bond by himself or through his agent, who must have special authority for that purpose, while it would be a literal compliance with the statute for his attorney at law to execute the bond in his own name, binding of course upon no one himself and the sureties who might subsequently sign.

The inconsistency of this construction is avoided by holding, as we do, that the bond is a good one under the statute if the agent execute the same in his own name, and this seems the only construction which the law seems susceptible of, to preserve its unity and give force and effect to the language. Being a remedial act, it should receive a liberal interpretation, such as, while it looks to the object of the statute, and secures ample indemnity to the defendant, leaves the remedy unfettered by a useless restriction, and one in our opinion not designed by the Legislature. An argument drawn from inconvenience, is invoked in favor of this construction, and we think it is entitled to great weight.

The remedy afforded by the statute would, in a majority of cases, be unavailing if the creditor, who is supposed to be absent, is expected to furnish his agent with special

authority to execute attachment bonds in anticipation of his debtors fraudulent acts. In this case, the agent having executed the bond in his own name, and given two good and sufficient securities, the end and purpose of the law, in our opinion, was complied with, while the consistency of the statute is preserved.

Statutes similar to our own have received in some of our States a judicial construction which support the foregoing views.

In Mississippi, the law requires that before the attachment is granted " bond and security shall be taken from the party for whom the same shall be issued, his agent or attorney," &c. Upon the same question as the present, coming before the Court, in the case of Frost vs. Cook, 7 Howard R., 358, Clayton, Justice, said : " The bond given by the agent complied substantially with the statute ; the object was to secure the defendant in the recovery of costs and damages, and that object is as well obtained by a bond of the agent as of the principal." See also Page vs. Ford, 2 S. & M., 266.

Let the judgment of the Court below be reversed and set aside, and the cause remitted to the Court below with instructions to deny the motion to quash, and to proceed in the cause.

Hon. J. Wayles Baker of the Middle Circuit, who sat in this cause, was understood to dissent from the judgment of the Court.