## E. SIMPSON & Co. vs. KNIGHT & FRASIER.

1. An attachment bond executed by an attorney at law, in his own name, binding himself and not his principal, and signed by two good and sufficient securities, is sufficient under the statute to sustain the writ of attachment.

2. The third rule of Court does not conflict with the statute authorizing an attorney at law to sign an attachment bond binding himself and not his principal.

3. The notice required in attachment suits is to enable defendant to appear and plead to the merits of the cause, and not to appear and contest the validity of the writ, and the only limitation to the time of notice is, that no judgment can be rendered before satisfactory proof of such notice.

4. To obtain the writ of attachment it is only necessary to file the proper affidavit and bond with the clerk—a præcipe is not required by law.

The time of filing the affidavit for attachment is made by statute, for all legal purposes, the date of the commencement of the suit.

5. The rule of this Court, adopted in 1854, was not intended to regulate the practice in the Circuit Courts. It is directed to the clerks in making up a record to be used in this Court, to copy the papers in the order in which they were originally filed.

Appeal from Suwannee Circuit Court. This case was decided at Tallahassee.

*J. J. Finley*, Attorney for Appellants.

*James Banks, McLeod and Broome*, for Appellees.

BAKER, J., delivered the opinion of the Court:

This suit was commenced by attachment in the Circuit Court for Columbia county, in the Suwannee Circuit.

The record shows that the affidavit was sworn to by J. J. Finley, the attorney for Elias Simpson & Charles Johnston, merchants and partners doing business in the city of New York, under the name and style of E. Simpson & Co., and filed on the 1st day of February, 1867. On the same day the attachment bond was filed, signed by the said J. J. Finley, R. T. Gist and A. A. Ochus, and was approved by the Clerk of the Court. Upon the filing of said affidavit and bond, an attachment was issued and levied upon the goods and chattels of Knight & Frasier, the appellees. The return of the Sheriff shows that the levy was made on the 2d day of February.

The attorneys for defendants gave notice that on the 16th day of March, they would make a motion, before the Hon. T. T. Long, to " dismiss and dissolve the attachment :"

1st. Because no bond has been properly signed and delivered, as the law required.

2d. That no service of process ever has been made.

146 SUPREME COURT.

Simpson & Co. vs. Knight & Frasier—Opinion of Court.

3d. Because there is no præcipe sued out authorizing the issue of writs of attachment.

4. Because the affidavit is incomplete.

The court, after hearing the argument of counsel on said motion, "ordered and adjudged that the said motion be sustained; that the said writ of attachment be dissolved, and that the suit be dismissed."

The errors assigned are four in number, alleging that the court erred in dissolving the attachment and dismissing the suit upon the exceptions upon which the motion was based. It does not appear from judgment of the court whether all the exceptions taken were sustained, or only a part; it is therefore necessary that all should now be considered.

In the exception taken to the affidavit, it is not shown in what part it is alleged to be "incomplete." Upon examination the affidavit is found to be drawn with the usual professional skill, setting forth all the allegations necessary to sustain an attachment suit, and is sworn to by the attorney for plaintiffs, and inasmuch as the point was not pressed in the argument before this court, we presume it was not relied upon, or wholly abandoned.

The exception taken to the execution of the bond was strongly urged by the counsel for appellees. They insist that the bond could not be legally executed by J. J. Finley, in his capacity of an attorney at law; that the bond required by the statute must be executed by the plaintiff or by his attorney in fact, and to maintain this position rely on the act which provides that no attachment shall issue until the party applying for the same, shall, by himself or by his agent or attorney, enter into bond with at least two good and sufficient securities. Thomp. Dig., 368.

In the case of Conklin & Smith vs. Goldsmith, 5 Fla., 280, the questions arising under this statute were fully discussed. The peculiar phraseology used makes its construction difficult. The court, however, after a careful examina-

tion arrived at a conclusion and gave a definition of the act which has been received and acquiesced in by the legal profession as well as the legislature, for many years, as the law of the State, and nothing has been presented in the argument on this case to induce this court to overrule that decision. Mr. Justice Semmes who delivered the opinion of the court, said: "The main object of that part of the statute was to protect the debtor from an improper use of the remedy, by requring two good and sufficient securities to the bond. This object can as well be accomplished when the agent executes the bond in his own name as in the name of his principal."

In the case before us, an attorney-at-law executes the bond, and binds himself that he may obtain the writ of attachment for the benefit of his client. Since it has been settled that an agent can sue out a writ of attachment for his principal, by executing the bond in his own name, it seems easy to arrive at the conclusion that the statute confers equal authority upon an attorney-at-law. The reasoning of the court in the above stated case is based in part upon the use of the word attorney in the statute in contra-distinction to the word agent, it being the duty of the court to construe the law if possible, so as to give a meaning and effect to every word and clause in the act. "It could not have been contemplated in the use of the word attorney to imply he should be one in fact, but an attorney-at-law, unless we conceive the folly that after the word agent, the legislature should have seen the necessity of the relative term, conveying the identical same idea. If the word attorney does not mean one at-law, then it must be rejected as unmeaning and superflous." Conklin and Smith vs. Goldsmith, 5 Florida 283.

It is objected to this construction, that an attorney-at-law cannot execute an attachment bond without violating the third rule of court. "That no attorney or other officer of court shall enter himself, or be taken as bail in any criminal

case, or as security in attachment, appeal, or writ of error, or other proceeding in court, on pain of being considered in contempt, and of having the proceedings dismissed, on account thereof." The decision in the case of Love vs. Sheffelin & Co., 7 Fla., has been cited to sustain this objection. Neither the rule nor the decision seem to apply to this case. The rule prevents an attorney-at-law from signing an attachment bond as security, and was doubtless framed in reference to the authority granted under this statute—to make himself the principal.

Chief Justice Baltzell who delivered the opinion in the Love & Sheffelin case, must have been familiar with the decision in the case of Smith & Conklin vs. Goldsmith, and if he had supposed that any conflict existed between the ruling in that case, and the rule of court which he considered so elaborately, he would have made some comment and not pass it over in silence.

In that opinion the Chief Justice gives as reasons for the adoption of the rule, that it was necessary to protect suitors, and to secure them a fair and impartial trial, by preventing officers of the court from voluntarily assuming liabilities, which would necessarily bias the judgment and secure them as active partisans on one side or the other of a cause, and perhaps enable them to impede or prevent the great ends of justice. Love vs. Sheffelin & Co., 7 Fla.

This reasoning certainly applies with great force to many of the officers of the court, but not so clearly to attorneys-at law, who generally have the very strongest motives for espousing one side or the other of every cause they undertake. Motives higher and stronger than mere personal liability for costs, and it does not follow that they thereby impede and prevent the great ends of justice. The statute by conferring this authority seeks to secure and does not tend to impede or prevent the ends of justice as the remedy afforded by attachment would in many cases be unavailing, if the absent

,creditor is required to furnish a special·authority to execute the necessary bond, in anticipation of his debtors fraudulent acts.

The next exception taken, was, that no process was served on the defendants.   That under the act of 1833 the defendants were entitled to notice of the issuing of the writ of attachment.   It is true that the statute does require notice to be served personally or by publication, when the property attached is not replevined ; and further, that such notice shall require all persons interested, to appear and plead to the declaration filed in such case, and it shall and may be lawful for the court, upon satisfactory proof of such notice, and upon the finding of the jury·of inquest to be called for that purpose, to award their judgment upon said finding.— Tho. Dig. 369, sec, 3.

The object of the notice required is not to notify the defendant to appear and contest the .attachment by motion to dissolve or quash the writ, and can in no way affect its validity.   The notice is to appear and plead to the declaration filed in the case, to give the defendant an opportunity to set up any defence he may have to the plaintiffs' cause, or in any legal way contest the validity of the claim against him.

The statute fixes no time when such notice shall be given, and the only limitation or restriction in the act is that the plaintiff cannot obtain his judgment until he has made satisfactory proof of notice.

The only remaining exception for consideration is " That no præcipe was sued out authorizing the issue of the writ of attachment."

The attachment law passed in 1834, clearly specifies all the conditions required of the Plaintiff to enable him to sue out a writ of attachment.   He must by himself or by his 'gent or attorney, first file with the clerk an affidavit and ‿ꭒnd in the manner and form provided in the act ; but no

præcipe is required or mentioned, either in this statute or in the act regulating pleadings in attachment suits, which directs that the filing of declaration and other proceedings shall be governed by the same rules as pleadings in other suits at law. Tho. Dig. 369.

The act approved November 23, 1828 requires, that in all personal actions a memorandum or præcipe shall be filed with the clerk before summons can be issued to the defendant. In the second section of that act, the clerk is required to transcribe such præcipe in a book to be kept for that purpose, before issuing the summons, "and to make in said book a similar memorandum of cases commenced by attachment, which præcipe or memorandum shall have date on the day when said præcipe is received by the clerk, or when the affidavit is filed with him to obtain process against the estate of defendant."

The statute here makes a clear distinction between the manner of commencing a suit against the person and against the estate of the defendant. In the one case the præcipe is required to be filed and recorded before a summons can issue to the person; in the other, the filing of the affidavit is the first act necessary to obtain process against the estate of defendant; and the date of filing the affidavit as well as of filing the præcipe is made by statute, for all legal purposes, to be the time when such suits can actually commence. Thomp. Dig. 325.

The rule of this court adopted in the year 1854, has been quoted as authority to sustain the position that a præcipe is necessary before an attachment can issue. Such was not the intention of the court, and we do not see how the rule can admit of any such construction; it was adopted to remedy the careless and irregular manner in which records were often sent up to this court. It requires "first the præcipe and summons, affidavit and bond for attachment and other proceedings, with the writ issued thereon with return; sec-

ond, declaation and other pleadings," &c. The obvious meaning of the rule is that when a suit is commenced by præcipe such præcipe with the summons shall be placed first on the Record, and when commenced by affidavit and bond for attachment or replevin suits, such affidavit and bond with the writs issued thereon shall be entered first on the record; then follows the declaration and other pleadings. The rule does not pretend to regulate any practice in the Circuit Courts. It merely directs that the papers in the court below shall be copied into the record in the order in which they were originally filed.

Having thus fully considered all the questions presented by the record for our decision, it is our opinion that the assignment of errors by appellants was properly made, and that the judge of the Circuit Court erred in sustaining defendant's motion to dissolve the attachment and dismiss the suit.

It is therefore ordered that the judgment be reversed and the case remanded to the Circuit Court for further proceedings.