863 So.2d 418 (2003)
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellant,
v.
B.Y., the Grandmother, Appellee.
No. 4D03-715.
District Court of Appeal of Florida, Fourth District.
December 31, 2003.
Jeffrey Dana Gillen, West Palm Beach, for appellant.
Kirsten A. Herndon, William Booth, and Michelle Hankey of the Legal Aid Society of Palm Beach County, Inc., West Palm Beach, for appellee.

ON MOTION FOR RECONSIDERATION AND REHEARING AND MOTION FOR REHEARING EN BANC
PER CURIAM.
We grant the Department of Children and Families' (DCF) motion for reconsideration and rehearing, but deny the motion for rehearing en banc. As a result, we withdraw our previous opinion and substitute this opinion in its place.
*419 The question framed by DCF is whether a trial court may order DCF to consent to an adoption, or finalize an adoption in the absence of DCF's consent, given certain facts. In this case, DCF selected an adoptive parent but did not conduct a final home study. Because a final home study had not been completed, DCF had not prepared a written consent to adoption. Because DCF had not consented to the adoption in writing, it did not guarantee an award of post-adoption subsidies. DCF contends that discretion over this chain of events from home study to consent to subsidies is firmly reposed in it by Chapter 39 and related administrative rules, and may not be upset by judicial intervention, even where section 63.125(1), Florida Statutes applies.
B.Y. instead relies upon the judicial powers for the protection of children vested by Chapter 63 in asserting that the trial court did not err by finalizing the adoption of the children. This is especially the case because no home study was required under section 63.125(1) where at least two of the siblings to be adopted were within the third degree of consanguinity with B.Y.
The facts of this case are as follows. DCF sheltered the children in this case, J.L.P., B.D.P., and J.S.P., in September 2001. The children were subsequently adjudicated dependent as to their mother. The children remained in the protective custody of DCF until January 2002, when DCF and the guardian ad litem for the children filed a joint motion for emergency placement of the children with B.Y., the grandmother. B.Y. had recently moved from Pennsylvania to be near the children, and the trial court granted the motion allowing for expedited placement with B.Y.
In February 2002, a judicial review of the children's situation was conducted, finding that B.Y. was willing to assume custody of the children, and leading DCF to favor adoption. However, B.Y. lacked the financial resources necessary to obtain adequate housing. In March 2002, a preliminary home study was undertaken in anticipation of the placement of the children with B.Y. The study was favorable and B.Y. was awarded temporary custody. Upon obtaining temporary custody of the children, she began living in a transitional housing program providing her with housing for up to two years.
In anticipation of adoption, the rights of the children's parents were terminated. The children were committed to DCF for adoption and B.Y. was determined to be a suitable permanent custody arrangement for the children. Throughout the proceedings below, B.Y. was represented to be the grandmother of the three children and DCF did not contest this representation. Adoption finalization was set for January 31, but on that date, DCF refused to consent to B.Y.'s adoption of the children because a final home investigation was not conducted as she remained in temporary housing.
At the next hearing on February 7, DCF again refused to consent to the adoption due to the outstanding nature of the home investigation. DCF also stated that adoption subsidies would not be payable to B.Y. in the absence of DCF consent to the adoption. In response, the attorney ad litem for the three children argued that a final home investigation was not required under section 63.125, because B.Y. was within the third-degree of consanguinity with the children. At the conclusion of the hearing, the trial court directed DCF to consent to the adoption, ruled that no home investigation was required based on the statute, and mandated the payment of subsidies. However, on February 14, DCF again refused to consent to the adoption because B.Y. had not obtained permanent housing and the home investigation *420 had not been completed. The trial court reiterated the February 7 rulings and finalized the adoption without DCF consent.
We now turn to a review of the applicable law. This review, particularly where it involves statutes, is complex in the present case because the applicable law has been seldom cited by Florida courts. As a result, it will become necessary to engage in a certain degree of statutory construction only where the meaning and operation of particular statutes is uncertain. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992). Statutory language should be given its plain and ordinary meaning unless otherwise defined by statute or legislative intent. Green v. State, 604 So.2d 471, 473 (Fla.1992) (citation omitted). This task may be accomplished through resort to a dictionary. Id. (citation omitted). Additionally, "[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Forsythe, 604 So.2d at 455 (emphasis in original). To this end, statutory language should not be construed in such a way as to render it superfluous or insignificant. Conklin v. Goldsmith, 5 Fla. 280 (1853).
In C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA 1996), HRS, DCF's predecessor, selected adoptive parents for a child but the trial court finalized the adoption in favor of the child's foster parents. Id. at 265. In reversing the trial court's decision, this Court wrote:
Chapter 39 specifically controls the placement for adoption of children where parental rights have been previously terminated. While Chapter 63 authorizes the trial court to finalize the adoption, its provisions are triggered only after HRS places and approves a child for adoption as provided in Chapter 39. Thus, we conclude, that the general grant of authority over all adoption proceedings does not supersede HRS's specific authority to select the adoptive parents.
Id. at 268. Additionally, Chapter 63 may allow the courts to intervene if HRS has failed to select adoptive parents or has made an inappropriate selection, but the courts cannot act without HRS's consent under ordinary circumstances. Id. at 269.
This precedent appears to strongly indicate that a court may not mandate DCF's consent to an adoption, as the court's role is not triggered until DCF has placed the child and given its approval for adoption, barring extraordinary circumstances. See, e.g., L.R. v. Dep't of Children & Families, 822 So.2d 527, 531 (Fla. 4th DCA 2002) (reiterating "that the trial court lacks authority to waive DCF's consent to the adoption of a child in its control"). B.Y. suggests that C.S. addresses only DCF's selection of adoptive parents, not the finalization of an adoption after those parents have been selected. B.Y. contends that this reading can be placed on C.S. and its progeny because the cases exemplify instances in which two sets of parents were attempting to adopt the same child.
In light of C.S., we next explore the relevant statutory language of Chapters 39 and 63 to determine how they are intended to work in tandem. Chapter 39 governs proceedings related to children, and its provisions are to be liberally construed based on Florida Statutes section 39.001(9). The provision at issue in the present case is section 39.812(1):
If the department is given custody of a child for subsequent adoption in accordance with this chapter, the department many place the child with an agency as defined in s. 63.032, with a child-caring agency registered under s. 409.176, or in a family home for prospective subsequent *421 adoption. The department may thereafter become a party to any proceeding for the legal adoption of the child and appear in any court where the adoption proceeding is pending and consent to the adoption, and that consent alone shall in all cases be sufficient.

(Emphasis added). Additionally, section 39.812(5) states that "[a] copy of the consent executed by the department as required under s. 63.062(7) must be attached to the petition."
DCF maintains that the language of Chapter 39 clearly indicates that DCF consent is the sine qua non of adoption finalization and that such consent must be executed in writing before an adoption can become final. B.Y. places emphasis on the italicized words of section 39.812(1) above, stressing that DCF may give its consent for an adoption, indicating that it does not have to and that other parties must be able to consent. Before further evaluating the parties' arguments regarding Chapter 39, we will analyze the provisions of Chapter 63.
The key section of Chapter 63 as relevant to the case at bar is section 63.062(7) which provides:
If parental rights to the minor have previously been terminated, a licensed child-placing agency, a child-caring agency registered under s. 409.176, or the department with which the minor has been placed for subsequent adoption may provide consent to the adoption. In such case, no other consent is required.

(Emphasis added). DCF views this language as again supporting a requirement for its consent prior to adoption, but B.Y. contends that the language clearly makes DCF's consent permissive, especially because DCF is not a listed party from which consent is required under section 63.062. It is true that section 63.062(1) emphasizes the consent of individuals such as the child's mother and father, but the provision also states that such are the rules when there is a "petition to terminate parental rights pending adoption." In the present case, the termination of parental rights has already occurred.
What is indicated in the cited sections by the fact that no other consent is required if DCF consents, is that in a case where parental rights have been terminated, DCF has custody of the child and may consent to an adoption if it sees fit. If it does consent, this consent will be sufficient because other possible consenting parties, such as the mother and father, will no longer have the right to consent. In sum, if DCF elects to finalize the adoption, no other consent is required because parental rights have been terminated, but DCF does not have to consent to the adoption, in which case judicial oversight of the adoption will not be triggered.
This conclusion is bolstered by the applicable provisions of the Florida Administrative Code. Florida Administrative Code section 65C-16.010 addresses the adoption process. Subsection 4(a) provides that a final home evaluation must be conducted before the adoption petition is heard by the court and a written recommendation as to whether the adoption should occur must be submitted to the court. Fla. Admin. Code 65C-16.010(4)(a). Then assuming that the final home evaluation leads to a recommendation that the adoption be approved, subsection (4)(b) provides that DCF must sign a standard consent to adoption form, and provide a copy to the adoptive parents' attorney before adoption can take place. Fla. Admin. Code R. 65C-16.010(4)(b). Considering this chain of events, it appears that a final home study is required prior to DCF's consent to adoption. Combining case law, statutes, and rules, we conclude that the decision to grant consent to adoption is firmly reposed *422 in DCF and may not generally be intruded upon by the judiciary.
This, however, does not resolve the question of whether DCF was justified in withholding its consent considering the circumstances of the case at bar. B.Y. contends that the final home study was not required in the present case based on the language of section 63.125(1):

The final home investigation must be conducted before the adoption becomes final. The investigation may be conducted by a licensed child-placing agency or a professional in the same manner as provided in s. 63.092 to ascertain whether the adoptive home is a suitable home for the minor and whether the proposed adoption is in the best interest of the minor. Unless directed by the court, an investigation and recommendation are not required if the petitioner is a stepparent or if the minor is related to one of the adoptive parents within the third degree of consanguinity.

(Emphasis added). The first italicized sentence indicates that under typical circumstances, the home study must be conducted and that DCF would be justified in withholding its consent where this mandatory procedure did not occur.
The second italicized sentence is that on which B.Y. rests her argument. However, this sentence poses a problem for B.Y.'s assertion that DCF may not withhold its consent for inability to conduct a home study. The language only states that a home study is not required, not that DCF cannot choose to undertake one under the given circumstances if deemed necessary. This is the case because the word "require" means to "make something necessary" or "demand something by law," indicating that the home study is not necessary or mandated by law, not that it is prohibited or not permitted by law. See Encarta World English Dictionary (2003), at http://encarta.msn.com/dictionary/require.html.
In essence, this statute authorizes DCF to dispense with typical investigatory procedures where no concerns are raised about the relative adoption. However, if DCF has concerns about the adoption it may elect to employ typical procedures such as a home study to determine the appropriateness of the adoptive placement. Furthermore, a court can order the home study where it has concerns about the adoption, even if DCF does not have those concerns.
Overall, DCF holds the discretion to consent to adoptions, withhold its consent, and do so based on inability to conduct a final home study even where section 63.125(1) applies, if DCF has concerns about the prospective adoptive placement. Therefore, the finalized adoption in this case must be reversed and remanded for compliance with the procedures deemed necessary by DCF for adoption consent. Based on this outcome, we decline to reach the adoption subsidies issue on appeal, because this issue will be revisited and potentially mooted by further proceedings.
REVERSED AND REMANDED for further proceedings consistent with this opinion.
GUNTHER, KLEIN and GROSS, JJ., concur.