STEVENSON, J.
Appellants, the Department of Children and Families (DCF) and K.W. and M.W., prospective adoptive parents, challenge the final order of consent for adoption filed on December 14, 2001, granting the foster parents, J.M. and G.M., the right to proceed with their adoption of the minor, B.G.J. We reverse because the trial court did not have the authority to place B.G.J. for adoption with the foster parents when that decision was contrary to DCF’s appropriate selection of M.W. and K.W. as adoptive parents. In addition, we conclude that there is no competent substan *985 tial evidence in the record to support the trial court’s finding that DCF orally consented to B.G.J.’s adoptive placement with the foster parents, J.M. and G.M.
B.G.J. was born to a cocaine addicted mother on June 13, 2000, and was thereafter placed in a foster home with J.M. and G.M. Later, DCF filed a Petition for Termination of Parental Rights- (TPR) on September 27, 2000, which was issued on January 10, 2001. Pursuant to the TPR order, B.G.J. was placed in the custody of DCF for the purpose of subsequent adoption.
Within a few weeks of placement in the foster home, J.M. and G.M. contacted DCF, expressing interest in adopting B.G.J. DCF adoption unit caseworker, Michelle Foraker, was concerned, however, with J.M. and G.M. proceeding with adoption because of DCF’s policy to try to keep siblings together; in March of 2001, Tallahassee residents, K.W. and M.W., finalized their adoption of B.G.J.’s twin brothers.[1]
At a hearing on April 5, 2001, DCF stated that it was exploring other options for the placement of B.G.J., including placement with her siblings. The trial court set a hearing date, asking that Mr. May, a DCF District Administrator, be present to explain DCF’s decision. At the hearing, Mr. May stated that he personally preferred placement with J.M. and G.M. because B.G.J. had bonded with them, but that DCF wanted to give due consideration to K.W. and M.W. as well. On August 8, 2001, another hearing was held concerning the adoption of B.G.J. where a DCF adoption supervisor represented to the court that:
[W]e have a family [the foster parents, J.M. and G.M.] identified that is interested in continuing for permanency for the child. The Department is diligently working on the home study. There was interest of another party that has siblings of the child. The Department recognizes and respects the growing bond with the present care givers. It was a difficult decision. The Department is proceeding with the home study, however, on the present care, givers and we hope to have that completed very shortly. We would like, we would be happy if we had a final scheduled, whatever Your Honor’s pleasure is.[2]
On September 14, 2001, the parties came before the trial court again in an attempt to finalize B.G.J.’s adoption. This time, DCF stated that it would not place the child with J.M. and G.M. as a permanent placement. Judge Virginia Broome expressed her concern as to why DCF now considered J.M. and G.M. unsuitable and rather preferred K.W. and M.W. as appropriate adoptive parents -for B.G.J. DCF stated that it needed more time to conduct a “match staffing” whereby the two families would be considered and rated numerically in several different categories. On September 20, 2001, after the match staffing was completed, DCF gave consent to K.W. and M.W. to adopt B.G.J. On October 29, 2001, B.G.J.’s guardian ad litem filed an objection to DCF’s selection of K.W. and M.W. pursuant to section 39.811(9), Florida Statutes (2001). After a hearing was held, Judge Broome decided that it was in B.G.J.’s best interest to stay with J.M. and G.M. because they had bonded. In addition, the trial court found *986 that DCF had previously consented to J.M. and G.M. adopting B.G.J. at the August 8th hearing, and therefore, DCF was estopped from contesting that consent.
The resolution of this case is largely controlled by C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA), rev. denied, 680 So.2d 424 (Fla.1996). There, S.D.V-H., a baby girl, was placed in temporary foster care. Subsequently, both the foster parents and the child’s biological aunt wished to adopt her. See id. at 262-63. The Department of Health and Rehabilitative Services (now DCF) advised the foster parents of its decision to approve the biological relatives as adoptive parents. See id. The foster parents, however, challenged that decision, alleging that HRS promised them approval as adoptive parents. See id. The trial court concluded that “to remove the child from her ‘loving, caring and nurturing environment’ would result in psychological stress to the child,” and determined that it had authority to grant the foster parents’ adoption petition notwithstanding HRS’s selection of the biological relatives. Id. at 265.
In C.S., this court thoroughly discussed the interplay between the statutory provisions regarding HRS’s power to select adoptive parents for children whose parental rights have been terminated and the trial court’s overall jurisdiction to entertain adoption petitions, found in Florida Statutes chapters 39 and 63, respectively. Based on that analysis, we concluded that the trial court had no authority to reject an appropriate adoptive placement by HRS, reversed the trial court’s final judgment of adoption, and remanded so that the biological relatives could proceed with the adoption. See C.S., 671 So.2d at 270. Likewise, we find that the trial court, here, did. not have the authority to determine the adoptive placement of B.G.J.
The statutory scheme presumes that DCF is in the best position to determine which family is appropriate for adoption placement, but allows the trial court to review the appropriateness of that selection. See § 39.812(4), Fla. Stat. (2001). DCF performed a match staffing that thoroughly reviewed certain criteria as to which family would be more suitable for B.G.J. It is DCF’s policy to try to keep siblings together, and that policy was given great weight by DCF in its determination that K.W. and M.W. should be the adoptive parents. The trial court’s order did not contain any findings that DCF’s selection of K.W. and M.W. was inappropriate. Rather, the trial court stated that they were both “fine families” and that “[t]he Court has great admiration for both families.” As found in C.S., a trial court cannot interfere with DCF’s decision to select an adoptive family “where HRS’s selection was appropriate, consonant with its policies and made in an expeditious manner.” 671 So.2d at 262. Furthermore, we find that J.M. and G.M.’s estop-pel argument is not well founded. The equivocal statements made by the DCF adoption supervisor at the August 8th hearing did not amount to an oral affirmation of DCF’s consent that J.M. and G.M. would be the adoptive parents, and in any event, DCF’s consent must be in writing. See §§ 39.812(5), 63.052(5), 63.082(3)(b), Fla. Stat. (2001).
Accordingly, we reverse the final order allowing J.M. and G.M. to adopt B.G.J. and remand for further proceedings consistent with this opinion which will allow K.W. and M.W. to proceed with their adoption of B.G.J.
REVERSED and REMANDED.
WARNER and HAZOURI, JJ., concur.

. The twin boys were almost two years old when placed with K.W. and M.W. for adoption in August of 2000. Upon adopting the twins, K.W. and M.W. did not express interest in adopting B.G.J., but DCF wanted to keep that option open, giving them a chance to first adjust to the twins.

. J.M. and G.M. argue on appeal that this statement qualified as consent by DCF to B.G.J.’s adoptive placement with them, and therefore, that DCF was estopped from giving K.W. and M.W. consent to adopt B.G.J.