822 So.2d 527 (2002)
L.R. and L.R., Appellants,
v.
DEPARTMENT OF CHILDREN & FAMILIES, Appellee.
No. 4D01-3289.
District Court of Appeal of Florida, Fourth District.
July 17, 2002.
*528 Lynn G. Waxman of Lynn G. Waxman, P.A., West Palm Beach, and Amy Hickman of Hausman & Hickman, P.A., for appellants.
Charles D. Peters and Jeffrey Dana Gillen, West Palm Beach, for appellee.
POLEN, C.J.
Appellants L.R. ("Grandmother") and L.R. ("Step-grandfather") timely appeal the trial court's dismissal of their petition for the adoption of the minor children B.T. and M.W., currently five and three years old, respectively. We reverse, holding L.R. and L.R. ("the grandparents"), who had filed a petition for the adoption of the children, were entitled to participate in an adjudicatory hearing where the trial court is to determine adoptive placement in the "best interests" of the children.
The present case began when the minor children were taken into shelter by the Department of Children and Families ("DCF") in November of 1998. The children were subsequently placed in temporary relative placement with their paternal grandparents, L.R. and L.R., in January of 1999. The children remained in the grandparents' care up to and through October of 2000, when the parental rights of their parents were terminated via the execution *529 of voluntary surrenders. The children were hence placed in the permanent care of DCF for subsequent adoption, however, temporary physical custody continued with the grandparents.
Sometime around November of that year the grandparents were informed by a DCF caseworker that the children's case had been transferred to the adoption unit. November 29, 2000, the grandparents received a letter from a new caseworker, requesting they provide various information regarding the children's interests and needs in order to facilitate their eventual adoption. The grandmother answered the caseworker's inquiries and composed a letter to the new caseworker on its reverse side. In pertinent part, the letter provided:
We are not willing to adopt the children to a family we have not first met and agreed to. The children are very important to us and we are not willing to give up our relationship with them. We are seeking an open adoption with a family in California. I was told by [initial caseworker] that you have been advised of that.... We want to remain in some contact with the children after they have been adopted. If this is not a possibility or if this cannot be guaranteed then we would like to proceed with the adoption ourselves.... We are ready to adopt if these principles/guidelines cannot be met.
(Emphasis added.) The aforementioned family in California was rejected by DCF since they were in the process of finalizing a separate adoption.
Sometime around mid-December/early-January, DCF informed the grandparents they had selected a non-relative married couple ("non-relatives") as a prospective adoptive placement. Testimony is conflicting regarding the representations DCF made to the grandparents at this time. According to the grandmother, DCF told her the non-relative family was very open to visits (by the grandparents), and that she would "still be Grandma and they would still be my grandchildren." However, according to the new caseworker, she testified she had never told the grandparents that DCF could "guarantee" an "open adoption."
In any event, the non-relatives were introduced to the children, and the grandparents, January 13, Relatively speaking, the parties "hit it off," and the grandparents told DCF they "approved" of the nonrelatives as prospective adoptive parents. The non-relatives commenced progressively more intensive visitations with the children over the course of the next month, working up to overnight visits with the children. Sometime in early February, the grandparents invited the non-relatives and the (new) caseworker to their home, to discuss the speed with which the adoption process was moving. The grandparents voiced concerns everything was moving too fast, and stated they needed a longer comfort period to build up a relationship with the non-relatives. Shortly thereafter, on February 6, the step-grandfather attended a meeting set up by DCF to address some corollary concerns regarding past visitations that had occurred while the children were under the grandparents' care. At this meeting, DCF informed him that the Department did not have any policy for "open" adoptions; DCF further informed him that the children would be handed-off to the non-relatives on February 17, less than eleven days away. After this meeting the grandparents decided to seek the advice of counsel. Counsel informed them once the children were adopted by another family, they would no longer have any cognizable legal rights as to the grandchildren, and any future relationship with the children would be at the sole discretion of *530 the adoptive parents. See § 63.172, Fla. Stat. (2001).
Immediately thereafter, the grandparents filed a pleading in the circuit court entitled "Petition for Adoption and for Temporary Injunctive Relief" on February 13. In this pleading they sought to adopt the children and moved for injunctive relief from the February 17 hand-off date on the grounds their petition had a "strong likelihood" of being approved of since they had a statutory priority to adopt under section 63.0425, Florida Statutes.[1] DCF refused to hold off on the February 17 hand-off and the children were turned over to the non-relatives on that date.
On March 19, 2001, a hearing was held in the circuit court, juvenile division, on the grandparents motion for injunctive relief. The court denied their motion for injunctive relief on the grounds they still had an adequate remedy at law vis-a-vis their simultaneously filed petition for adoption which was still outstanding. The court ordered the grandparents have no contact with the children or the non-relatives, and the remainder of the case, i.e., the grandparents' petition for adoption, was set on an expedited schedule for a mid-April trial. However, the April trial date was subsequently cancelled due to the illness of the grandparents' counsel.
Thereafter, DCF filed a motion to dismiss the grandparents' adoption petition, alleging inter alia, they had waived their statutory priority to adopt and that they lacked standing since DCF refused to consent to their petition. A hearing was set for DCF's motion to dismiss for May 24, 2001. The day before the hearing DCF officially consented to adoption by the non-relatives. Argument at the May 24 hearing before Judge Baker was quite brief. DCF primarily argued the petition needed to be dismissed due to waiver and a lack of standing, whereas the grandparents alleged they had standing to file a petition via their statutory priority under section 63.0425, a priority which they denied waiving. On July 18, 2001, Judge Baker entered an order summarily granting DCF's motion to dismiss. We find such dismissal constituted legal error.
First, we find at no time did the grandparents waive their statutory priority to adopt the minor children under section 63.0425. In order to establish waiver of a right or privilege, one must establish the waiving party had a right or privilege, had actual or constructive knowledge of that right or privilege, and intended to relinquish that right or privilege. See Mizell v. Deal, 654 So.2d 659 (Fla. 5th DCA 1995). Further, the waiving party must possess all of the material facts for its representations to constitute a waiver. See Zurstrassen v. Stonier, 786 So.2d 65 (Fla. 4th DCA 2001). Here, DCF contends the grandparents waived their right to statutory priority by telling DCF they were not interested in adopting the children in November of 2000, and by subsequently approving of the non-relative placement in January 2001. We find such line of argument highly unpersuasive. Viewing the evidence before this court in its totality, we find DCF's actions were misleading at best, if not downright deceptive. Clearly, the letter composed by the grandmother on the reverse of DCF's November 29 letter does not constitute an undeniable relinquishment of the grandparents' priority to adopt the children. The grandmother's response spelled out in *531 crystal-clear language that the grandparents were seeking an "open" adoption and if such could not be guaranteed, and I quote, "We are ready to adopt." Yet, DCF proceeded to explore other adoption alternatives, all the while knowing they do not arrange "open" adoptions. The series of events which occurred leading up to this litigation is entirely consistent with the grandparents' testimony, namely, that they did not know the adoptive placement with the non-relatives, favored by DCF, would not be "open," and would result in the termination of all cognizable legal rights as to their grandchildren, until February 6 at the earliest. We are careful not to speculate, but perhaps had DCF informed the grandparents in November of 2000 that the Department did not provide "open" adoptions, the grandparents would have filed a petition to adopt (as the grandmother's letter suggests) at that time, and this case never would have proceeded to such an adversarial stage.[2] We must be mindful, in these most delicate proceedings, children are involved, and it is their well-being which is our highest priority, and the ultimate yardstick by which we measure the success of our system.
We further hold the grandparents' petition should not have been dismissed at this stage of the proceedings for a "lack of standing" as DCF suggests. Clearly, the grandparents, with whom the minor children had lived with for over two years, have a statutory priority to adopt the children via section 63.0425. This statute provides qualifying grandparents shall be informed of impending adoptions, and if that grandparent petitions the court to adopt, the court shall give that grandparent first priority. We further note, the ultimate determination concerning adoptive placements rests with the trial court, which shall only enter a decree of adoption upon finding a particular adoptive placement is in the "best interest" of the child to be adopted. See § 63.142(4), Fla. Stat. (2001).
Still, we are mindful there appears to be some inherent tension between Chapter 39, Part XI (Termination of Parental Rights) and Chapter 63 (Adoption), regarding the adoption of children placed in DCF's care. As discussed, supra, section 63.0425 provides the court shall give first priority to petitions filed by grandparents who qualify under that statute. However, Florida Statutes section 39.812(1) provides, where a child is placed in DCF's custody for subsequent adoption, DCF may become a party to any proceeding for the legal adoption of that child and consent to the adoption, and that consent alone shall be sufficient in all cases. § 39.812(1), Fla. Stat. (2001). As understood by this court in Judge[3] Pariente's well-reasoned opinion in C.S. and J.S. v. S.H. and K.H., 671 So.2d 260 (Fla. 4th DCA 1996), the trial court lacks authority to waive DCF's consent to the adoption of a child in its control. Thus, where DCF consents to an adoption petition, the trial court lacks authority under chapter 39 to determine another adoptive placement is more appropriate. Id. at 266-67 (citing section 39.47(1994), which has been renumbered as section 39.812(2001)). Further compounding the tension between Chapter 39, Part IX and Chapter 63, recent amendments to *532 the governing statutory scheme provide adoption proceedings of children placed in the Department's care shall be "governed by chapter 63." See § 39.812(5), Fla. Stat. (2001)(added by Ch. 01-3, § 5, Laws of Fla., eff. Oct. 1, 2001).
Nonetheless, dismissal of the grandparents' adoption petition for a lack of standing was, at best, premature in the instant case. Simply, the non-relatives adoption petition had not yet been finalized by the trial court. Since this had not yet occurred, the grandparents clearly had, and continue to have, standing to intervene in the non-relatives pending adoption petition via s. 63.0125. See Fla. R. Civ. P. 1.230; see also C.S., 671 So.2d at 265 (biological parents had intervened in foster parents' pending adoption petition). With all due respect, at this stage of the proceedings, this is not a case about stating a legally sufficient basis for relief as the dissent maintains, but rather a case about standing. Whether the grandparents attempted to file their own petition for adoption (as they did) or had moved to intervene in the non-relatives pending adoption petition, the result remains the samethe grandparents are parties in interest and have standing to participate in hearings concerning the potential adoption of their grandchildren to the non-relatives.
On remand, we direct the trial court to determine if adoption of the minor children B.T. and M.W. is in the children's best interests, and upon such a finding, and such finding only, the court may enter a judgment of adoption. § 63.142(4), Fla. Stat. (2001). Though we maintain C.S. is still good law, the trial court is by no means required to grant the petition of the non-relatives to which DCF has consented.[4] As C.S. notes, the trial court may disapprove of placement selection upon a determination that placement is "inappropriate." C.S., 671 So.2d at 269. Furthermore, the adoptive placement of B.T. and M.W. ultimately rests upon a finding a particular placement is in the children's best interests.
Thus, we reverse the trial court's dismissal of the grandparents' adoption petition. We remand for the trial court to hold an expedited hearing where testimony from all interested parties shall be entertained.[5] At said hearing, the trial court shall enter a judgment of adoption only upon a finding a particular placement is in the best interests of the children.
REVERSED AND REMANDED.
TAYLOR, J., concurs.
STEVENSON, J., dissents with opinion.
STEVENSON, J., dissenting.
I respectfully dissent and would affirm the trial court's dismissal of appellants' petition for adoption. In C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA), rev. denied, 680 So.2d 424 (Fla.1996), this court held that it is within the discretion of the DCF to decide where to place a child who is in its custody pursuant to termination of parental rights proceedings under chapter 39. Section 39.812(1), Florida Statutes (2001), provides in part that:
If the department is given custody of a child for subsequent adoption in accordance with this chapter, the department may place the child ... in a family home *533 for prospective subsequent adoption. The department may thereafter become a party to any proceeding for the legal adoption of the child and appear in any court where the adoption proceeding is pending and consent to the adoption, and that consent alone shall in all cases be sufficient.
It is only when an inappropriate placement has been made that the trial court can reject the DCF's adoptive placement. See § 39.812(4), Fla. Stat.; C.S., 671 So.2d at 270. Even then, there is no statutory authority for the trial court to substitute its own preferred adoptive placement for that of the DCF; under the statutory scheme, the DCF would need to make another selection of adoptive parents which would then be reviewed by the trial court for appropriateness.
Here, without the DCF's consent, the grandparents' adoption petition, even with the benefit of the statutory presumption, did not present a claim upon which relief could be granted. Thus, the trial court did not err in dismissing appellants' adoption petition for failure to state a legally sufficient basis for relief.
NOTES
[1] "When a child who has lived with a grandparent for at least 6 months is placed for adoption, the adoption entity shall notify the grandparent of the impending adoption before the petition is filed. If the grandparent petitions the court to adopt the child, the court shall give first priority for adoption to that grandparent." § 63.0425(1), Fla. Stat. (2001) (emphasis supplied).
[2] We especially note the testimony of the second caseworker at the hearing on the grandparents' motion for injunctive relief that she would have had "no problem" in placing the children with the grandparents for adoption in November of 2000, but for the fact they declined to do so, "every step of the way." See also Fla. Admin. Code R. 65C-16.002(reflecting statutory grandparent priority as adoptive placement in DCF's selection process).
[3] Now Justice Pariente of the Florida Supreme Court.
[4] See Dept. of Children and Families, M.W. and K.W., v. Adoption of B.G.J., 27 Fla. L. Weekly D1491, (Fla. 4th DCA June 26, 2002).
[5] Though all juvenile cases are expedited in this District, such is especially necessary in the instant case. The children have been out of the grandparents' care for over a year, and due to the no contact order in place have been unable to maintain any contact (or relationship) during that time. Notwithstanding, we find no error in the trial court's initial issuance of the no contact order and its subsequent denial of the grandparents' motion to deny said order.