854 So.2d 822 (2003)
B.B., In re the Adoption of M.E., etc., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D02-2743/02-2938.
District Court of Appeal of Florida, First District.
September 19, 2003.
*823 Gwendolyn P. Adkins, Coppins & Monroe, P.A., Tallahassee, for Appellant.
Avron Bernstein, Child Welfare Attorney, Department of Children and Families, Tallahassee, for Appellee.
HAWKES, J.
In these two consolidated appeals, Appellant appeals from final orders denying her motion to intervene in a dependency action involving her twin grandchildren and her subsequent petition for adoption of those children, without addressing the adoption petition on the merits. We reverse the final order dismissing the petition for adoption, and remand for an evidentiary hearing. In light of this ruling, Appellant's appeal of the final order denying her motion to intervene is rendered moot.

I. Factual Background
Appellant is the paternal grandmother of four-year-old twins. For reasons not connected with this appeal, the Appellee, Department of Children and Families *824 (DCF) sheltered the twins from their parents. While in shelter care, the twins resided in placements other than with Appellant. Subsequently, DCF filed a motion to change custody to Appellant, noting Appellant had been previously approved by the court to supervise the parents' visitation with the twins, and DCF had approved Appellant as the twins' relative custodian.
After the twins had resided with Appellant for approximately three months, DCF informed her that the twins' father could no longer reside in her home if the twins were to remain. DCF gave Appellant 24 hours to have her son move from her home. DCF's ultimatum was based upon a psychological/psychosexual evaluation of the twins' father which indicated he posed a threat to all children and should not be allowed access to any child without completing all case plan tasks and recommendations submitted by the evaluating psychologist. When Appellant's son failed to move within the 24-hour deadline, DCF sheltered the twins from Appellant.
Contrary to the urgency DCF felt in regard to the twins, there was apparently no urgency as to the other children which remained in her care. The record indicates that, at the time DCF removed the twins based on the evaluation which indicated the twins' father posed a threat to all children and should not be allowed access to any child, DCF left five of Appellant's minor nieces and nephews in her home, and requested she provide shelter care for an infant sibling of those children.

A. Appellant's Court-Ordered Opportunity to Adopt
Subsequently, at the termination of parental rights (TPR) trial, held under Chapter 39, the court terminated the parents' parental rights to the twins. During the trial, the court ordered[1] that a cousin, Ms. Sykes, be considered as suitable to adopt the twins and, if she was unable or unwilling, then DCF was to give Appellant that opportunity. Appellant's opportunity to adopt her grandchildren was to be premised on two conditions: (1) the parents not having visitation alone with the children, and (2) the parents moving out of the building occupied by Appellant. If those conditions were not met, the trial court stated it would entertain a recommendation for another placement.
At the time of the court's order, the Guardian Ad Litem (GAL) sought clarification, asking if the court had indicated it would consider Appellant as an adoptive placement. The trial court responded: "Yes, only if Ms. Sykes cannot or will not be doing that; and only if [Appellant's son] moves out into another building and any visitation would have to be approved by y'all, and it would have to be supervised visitation."
DCF counsel repeated the court's ruling and made a procedural inquiry about visitation issues. Counsel stated: "In the event thatif it comes to pass that [Appellant] is not willing to comply with what the Court has ordered, regarding restrict any contact and if [Appellant's son] does not move out of the building. Does the Court then want to reserve a ruling or make a ruling now as to whether or not [Appellant] will have visitation rights as a grandparent?" To which the court replied it would "reserve jurisdiction over that question until we find out what [Appellant's] reaction is." The direct appeal of the TPR final order was affirmed. Neither DCF nor the GAL objected at the TPR trial, nor cross-appealed the trial court's order that Appellant be given the opportunity to adopt her grandchildren.

*825 B. Appellant's Attempts To Enforce The Order
Ms. Sykes was unable or unwilling to adopt the twins. DCF took no action to permit or assist Appellant in obtaining custody of the twins, and even reduced her visitation rights. Because of these facts, and the court's order granting Appellant the opportunity to adopt her grandchildren, Appellant filed a "Motion to Intervene and Enforce Court Order" in the Chapter 39 dependency proceeding. A hearing on Appellant's motion was conducted before a different trial judge than the one who presided over the TPR trial. The new trial judge accepted DCF's argument that Appellant's motion was premature. The trial judge held that, due to "the lull period" in Chapter 39 proceedings between TPR and the filing of an adoption petition, there were no proceedings into which Appellant could intervene. The trial court concluded that its jurisdiction could not be invoked until an adoption petition was filed under Chapter 63.
To invoke the trial court's jurisdiction under Chapter 63, Appellant filed an adoption petition, and a hearing was held before the same trial judge who presided at the hearing on Appellant's motion to intervene. At the hearing on the adoption petition, Appellant again relied, in part, on the court order that she was to be given an opportunity to adopt her grandchildren.
The trial court denied Appellant's adoption petition. DCF argued and the trial court held that the court: lacked jurisdiction, because the dependency court [under Chapter 39] has ongoing reviews and jurisdiction until the children are adopted; that DCF had identified another adoptive home for the twins; that DCF did not consent to Appellant's adoption of the twins and, absent DCF's consent, an adoption petition must be denied for the reasons discussed in C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA), rev. denied, 680 So.2d 424 (Fla. 1996); and that Appellant had been denied intervenor status in the dependency case. In so doing, the trial court erred.

II. Discussion
We discuss three aspects of the court's ruling: (1) its holding that it lacked jurisdiction to consider the adoption petition; (2) its failure to recognize the import of the TPR order granting Appellant an opportunity to adopt her grandchildren; and (3) the deference due DCF's placement choices.

A. The Trial Court Has Continuing Jurisdiction
First, the trial court erred by concluding it lacked jurisdiction based on DCF's arguments, which resulted in Appellant getting whipsawed without any forum in which to be heard. The dependency court is not divested of jurisdiction after a TPR trial simply because subsequent adoption proceedings will be conducted pursuant to Chapter 63. See §§ 39.812(4) and 39.813, Fla. Stat. (2001). The dependency court never loses jurisdiction after a TPR trial, and continues to retain exclusive jurisdiction throughout the adoption process. See §§ 39.812(4) and 39.813, Fla. Stat. In fact, "a circuit court has `inherent and continuing jurisdiction to entertain matters pertaining to child custody and to enter any order appropriate to a child's welfare.'" Henry & Rilla White Found., Inc. v. Migdal, 720 So.2d 568, 573 (Fla. 4th DCA 1998) (quoting In the Interest of J.M., 499 So.2d 929, 931 (Fla. 1st DCA 1986)) (emphasis added). Thus, at the hearings on both the motion to intervene and petition for adoption, the trial court had jurisdiction to allow Appellant to participate in a meaningful way in proceedings involving the ultimate placement of her grandchildren.

*826 B. The Trial Court's Order
At the conclusion of the TPR trial, the trial court ordered DCF to give Appellant the opportunity to adopt her grandchildren if a cousin could not or would not adopt them, and if Appellant met certain conditions. Since the cousin chose not to adopt the twins, DCF was required to give Appellant the opportunity to adopt her grandchildren if she met the court's conditions.
If DCF believed the court order imposed inadequate conditions or was contrary to law at the time it was entered, DCF should have objected. DCF's failure to do so waives any objection DCF may now have. Compliance with the order is now DCF's only option.
DCF provided no evidence that they complied with the order. Rather, DCF's counsel stated he could provide evidence that DCF had considered and rejected Appellant as an adoptive placement.[2] DCF's rejection was apparently due to concerns that Appellant might permit her son to see the twins. Significantly, the TPR trial court did not order that the twins' father not have visitation. The order was conditioned upon Appellant not permitting the parents to have unsupervised visitation with the twins, and requiring the parents to move out of the building occupied by Appellant. Thus, even if DCF's assertions were supported by evidence, its actions would have failed to comply with the trial court's order.
Appellant clearly had a right to be apprised of the status of the adoption proceedings. In spite of this right, the transcript indicates DCF failed to give Appellant any information as to the status of the adoption proceedings involving her grandchildren, or any indication that she was being given an opportunity to adopt them. Compliance with the court order would have required, at a minimum, that Appellant be apprised of the status of her grandchildren's adoption proceedings, and the steps DCF was taking to approve her as an adoptive placement.

C. Deference Due DCF
DCF argues, in essence, that because it did not consent to Appellant's adoption of the twins, and had chosen another adoptive placement, no other factors are relevant and the court must give unqualified deference to its placement decision. DCF misconstrues Florida law. DCF's authority and discretion are not absolute. For instance, the court is not precluded from placing conditions on the exercise of DCF's discretion to place the twins. See Dep't of Health & Rehab. Servs. v. Brooke, 573 So.2d 363 (Fla. 1st DCA 1991). Nor is the trial court required to grant the adoption petition of the non-relatives to whom DCF has consented. See L.R. v. Dep't of Children & Families, 822 So.2d 527 (Fla. 4th DCA 2002). The rule is that "a trial court cannot interfere with DCF's decision to select an adoptive family `where [DCF's] selection was appropriate, consonant with its policies and made in an expeditious manner.'" Dep't of Children & Families, & M.W. & K.W. v. Adoption of B.G.J., 819 So.2d 984, 986 (Fla. 4th DCA 2002) (quoting C.S., 671 So.2d at 262) (emphasis supplied). Certainly an appropriate selection depends on the facts of a particular case, and must always be consistent with Florida law.
*827 Therefore, it falls to the trial court to ensure that DCF's selection is appropriate and consonant with DCF's policy. It is the law of Florida and DCF policy "that relatives must be explored as [adoptive] placement[s]" and "relatives are the placement of choice." Fla. Admin. Code R. 65C-16.002(2). "[DCF] adoption staff must assure that such explorations were made and that there are, indeed, no available relatives willing to take the child." Id.
Grandparents are given particular preference, and "[w]hen a child who has lived with a grandparent for at least six months is placed for adoption, the adoption entity shall notify the grandparent of the impending adoption before the petition for adoption is filed." § 63.0425(1), Fla. Stat. (2001) (emphasis added). "If the grandparent petitions the court to adopt the child, the court shall give first priority for adoption to that grandparent." Id. (emphasis added). Where grandparents have priority status to adopt, they have standing to file an adoption petition or intervene in the petition filed by non-relatives. See L.R., 822 So.2d at 531. Here, although Appellant's grandchildren did not live with her for six months, they did live with her for three months. Moreover, Appellant visited with her grandchildren at every opportunity DCF offered, and was clearly interested in providing for their welfare. These are factors properly considered by the trial court when deciding to approve Appellant as a potential adoptive placement.
Since a legal interest sufficient to permit intervention can be created by an out-of-state order granting visitation rights,[3] an enforceable legal interest is also created by a court order approving Appellant as a potential adoptive placement and granting her the opportunity to adopt her grandchildren. Thus, we conclude that, because Appellant was a grandparent, court-approved as a potential adoptive placement, the court order created for her the equivalent of the statutory priority of section 63.0425(1), Florida Statutes.
Clearly, DCF's choice here of a non-relative adoptive placement was neither appropriate under the facts of this case, nor consonant with its own policy and Florida law that relatives are the placement of choice. Thus, by failing to comply with the court order to give Appellant an opportunity to adopt her grandchildren, and by failing to make an appropriate placement choice consonant with their own policies, DCF failed to meet the requirements necessary to qualify for the deference they seek.

IV. Disposition
Because the trial court erred in dismissing Appellant's adoption petition, we REVERSE and REMAND. On remand, an evidentiary hearing shall be conducted to determine whether Appellant would comply with the conditions for adoption imposed by the original trial court (i.e., whether Appellant would permit only supervised visitation with the biological parents, and whether the biological parents have moved, or will move, from Appellant's home). The original court stated it would consider another adoptive placement if these conditions were not met. Thus, if these conditions are met, Appellant should be permitted to adopt her grandchildren unless DCF can offer clear and convincing evidence that the twins would be at risk of being..... abandoned, abused or neglected under Appellant's care. REVERSED *828 and REMANDED for proceedings consistent with this opinion.
DAVIS and LEWIS, JJ., concur.
NOTES
[1] This order was entered in open court, but not reduced to writing.
[2] DCF's position that Appellant is an inappropriate adoptive placement for her grandchildren is inconsistent with DCF's actions of previously sheltering the twins with her, leaving five of Appellant's nieces and nephews in her home, and subsequently requesting she also shelter the children's infant sibling.
[3] In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991) (holding grandparents granted visitation rights by an out-of-state visitation order have standing to intervene in adoption proceedings).