WARNER, J.
The appellants, Mr. and Mrs. H, biological relatives of the child, M.S., appeal a final order finding the Department of Children and Families’ (“DCF”) selection of Mr. and Mrs. X as an adoptive placement for M.S. an appropriate placement. They contend that the court erred in limiting its review to the appropriateness of DCF’s selection of the X’s as adoptive parents instead of determining which of the two competing petitions for adoption was in the best interests of M.S. We hold that the trial court did not err in determining that DCF’s selection of the X’s as the adoptive placement was appropriate.
*675 Because M.S. tested positive for cocaine at his birth, DCF sheltered him and later granted the H’s, his maternal aunt and uncle, temporary legal and physical custody of M.S. at their home in Maryland. After the court terminated the rights of the mother and the putative father, M.M., the court entered an agreed order approving a case plan with a goal of adoption by July 19, 2006. Although the H’s were approved as a foster/adoptive home through the Baltimore County Department of Social Services, the H’s would not provide a signed subsidy agreement or a completed application to adopt the child. At some point after M.M. had relinquished his rights, the H’s paid to have DNA testing done which proved that M.M. was not the biological father. The H’s desired to obtain DNA testing on another man who might be the father, but DCF refused to pay for it.
During a status hearing in October 2006 counsel for DCF advised the court that Mrs. H no longer wished to adopt because the legal father whose rights were terminated was not the biological father. Mrs. H’s counsel clarified that Mrs. H wanted to adopt, but did not want the adoption to later be disrupted. The court concluded the person Mrs. H sought to have tested had no rights to challenge the adoption under Florida law. After discussing the rights of the putative father, the court asked Mrs. H whether she wanted to proceed to adoption, and Mrs. H replied, “We will not be adopting.” She advised the court that M.S. could either remain with the H’s in foster care, “or they need to come and get him.” The court told Mrs. H to think about her decision for a couple of weeks, and scheduled a status check for two weeks later.
A final adoption hearing was set and rescheduled at least once. However, the hearing never occurred. During a status hearing on April 19, 2007 in which Mrs. H appeared by telephone, she again requested that the child be removed because of various conflicts she had with DCF’s handling of the case. These included the failure to notify men whom the H’s claimed could be the biological father as well as the amount of subsidies to which the child was entitled for various medical conditions. The court entered an order to take M.S. into custody. The order was also based on a letter dated April 18, 2007, in which the social worker in Maryland informed the case worker at the Children’s Home Society that the H’s requested the immediate removal of the child from their custody. M.S. was removed from the H’s and placed in a new placement with Mr. and Mrs. X in Florida.
On April 27, the H’s filed a motion for the immediate return of M.S., stating that it was always their intention to adopt M.S., but that they were afraid the biological father would come forward and challenge the adoption. DCF and Children’s Home Society objected to M.S.’s removal from his new placement, because they had waited over a year for the H’s to sign the adoption papers which had never been signed. Moving the child would be disruptive, as he was adjusting well to his new placement. The court denied the motion for the immediate return of the child. The court determined that it would proceed to an “appropriateness” hearing.
The H’s filed a petition for adoption without attaching a consent from DCF to the adoption. The X’s filed their petition for adoption, and DCF issued its consent to the X’s adoption of M.S. The X’s moved to .dismiss the H’s petition due to their failure to obtain consent from DCF, their failure to have a current valid positive home-study, their lack of standing, and the guardian ad litem’s opinion that a placement with the X’s would be in the child’s *676 best interest. (The guardian ad litem and DCF joined in the motion to dismiss.)
The court conducted a lengthy evidentia-ry hearing to determine whether DCF’s consent to the X’s adoption of M.S. was appropriate. A witness from the Children’s Home Society, M.S.’s guardian ad litem, and a social worker all testified that M.S. had adapted well and bonded with his new family. The witnesses deemed the home an appropriate placement. The X’s testified about their home and family life with M.S. and their desire to adopt him.
The guardian ad litem questioned the H’s ability to make important decisions for M.S. based on their requesting his removal, which the guardian ad litem considered egregiously bad judgment. The guardian ad litem and social worker agreed that it was in M.S.’s best interests that he not be moved again. Another change of placement could cause M.S. to develop difficulty forming relationships with people.
The H’s called a social worker with the Baltimore County Department of Social Services, who testified that the H’s were an appropriate placement, although she acknowledged that their request for removal was not in the child’s best interests. The H’s testified to their continued desire to adopt M.S. and acknowledged that they made a major mistake in requesting his removal and refusing to adopt him.
In its final order entered on January 7, 2008, the trial court found DCF’s selection of Mr. and Mrs. X as an adoptive placement for M.S. “unquestionably appropriate, consonant with its policies and made in an expeditious manner given the unique facts and circumstances of this case.” The court permitted DCF to proceed with finalizing the adoption. The court denied as moot the motion to dismiss the H’s petition for adoption. The H’s appeal the order approving the adoption.
The H’s contend that the trial court misinterpreted current Florida law when it found that its review was limited to whether DCF’s selection of Mr. and Mrs. X was an appropriate adoptive placement. DCF and Guardian ad Litem Program counter that the trial court properly applied the law and correctly found that DCF’s selection was appropriate, consonant with the state’s policies, and made in an expeditious manner.
This court has consistently held that where DCF consents to an adoption petition submitted in a termination of parental rights proceeding, the trial court lacks authority to determine whether another adoptive placement is more appropriate. In C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA 1996), we discussed the interplay between chapter 39, regarding the power of the Department of Health and Rehabilitative Services (“HRS”) (the predecessor to DCF) to select adoptive parents for children whose parental rights have been terminated, with the provisions of chapter 63, relating to the trial court’s overall jurisdiction to entertain adoption petitions. HRS had consented to the adoption of C.S. by biological relatives, but C.S.’s foster parents contested the petition, and the trial court granted the foster parents’ petition for adoption. We concluded that while the trial court must act in the child’s best interests in adoption proceedings, that general policy does not supersede the specific statutory limitations on the trial court’s authority to interfere with HRS’s selection. Because the trial court had no authority to reject an appropriate placement by HRS, we reversed the trial court’s final judgment of adoption and remanded so that the biological relatives could proceed with the adoption.
We applied C.S. in Department of Children & Families v. Adoption of B.G.J., 819 So.2d 984 (Fla. 4th DCA 2002), where fos *677 ter parents sought to adopt a child who had been living with them since shortly after his birth. DCF ultimately consented to the child’s adoption by another couple who had adopted the child’s siblings. The guardian ad litem filed an objection to DCF’s selection. After a hearing, the trial court decided it was in the child’s best interests to stay with the foster parents because they had bonded.
On appeal we found C.S. controlling and held that the trial court did not have authority to determine the child’s adoptive placement. This court recognized that “[t]he statutory scheme presumes that DCF is in the best position to determine which family is appropriate for adoption placement, but allows the trial court to review the appropriateness of that selection.” Id. at 986 (citing § 39.812(4), Fla. Stat. (2001)). We concluded that a trial court cannot interfere with DCF’s decision to select an adoptive family where the “selection was appropriate, consonant with its policies and made in an expeditious manner.” Id. (quoting C.S., 671 So.2d at 262).
Although the H’s cite L.R. v. Department of Children & Families, 822 So.2d 527 (Fla. 4th DCA 2002), in support of their position, that case supports DCF’s position. There, we held that grandparents filing a petition for adoption had standing as interested parties to intervene in a non-relative’s adoption petition of their grandchildren. In our opinion we reaffirmed our holding in C.S. that “where DCF consents to an adoption petition, the trial court lacks authority under chapter 39 to determine another adoptive placement is more appropriate.” Id. at 531. We did not direct that the trial court must weigh one adoption petition against the other to determine which placement is in the child’s best interest.
The H’s also rely on I.B. v. Department of Children & Families, 876 So.2d 581 (Fla. 5th DCA 2004). However, the issue in I.B. was not whether the trial court had a duty to choose between competing adoption petitions but whether the trial court erred in changing a placement of a child from foster parents to adopting relatives without conducting an evidentiary hearing as to the appropriateness of the change of placement, i.e., whether it was in the child’s best interest. A change of placement is not the issue in this case. The H’s voluntarily relinquished M.S. to DCF. In fact, they demanded that DCF pick him up. Moreover, I.B. holds that a trial court should look at all the facts and circumstances of a case. That is exactly what the trial court did in this case, and its order even states that the adoption placement was appropriate “given the unique facts and circumstances of this case.”
The trial court correctly applied B.G.J., L.R., and C.S. when it limited its review to an appropriateness determination. The trial court properly found that DCF’s selection was appropriate, consonant with DCF’s polices, and made in an expeditious manner given the facts and circumstances of this case. There was competent substantial evidence to support that determination. A positive home study was completed on the residence of Mr. and Mrs. X. The home has ample space for M.S., and the family is financially secure. The Children’s Home Society, the guardian ad litem, and the social worker unanimously testified that M.S. had adapted well and bonded with his new family. They found the home an appropriate placement and testified that it was in M.S.’s best interests that he not be moved again. Even the H’s own witness, a social worker with the Baltimore County Department of Social Services, conceded that it was not emotionally in M.S.’s best interests to be *678 returned to the H’s after they affirmatively had requested his removal from their home.
The H’s advance the position that the trial court should have found that consent for them to adopt was unreasonably withheld, and then chosen between the two families which placement would be in M.S.’s best interest. However, there is simply no case law or statutory authority that vests a trial court with the authority to choose between two competing petitions to adopt. Rather, this court has consistently held that where DCF’s consent is appropriate, a trial court does not have the authority to place a child with another family. B.G.J.; L.R.; C.S.
We also reject the H’s position that sections 39.812(5) and 63.062(7), Florida Statutes (effective July 1, 2004), effectuated a change in the law permitting the trial court to choose them as the adoptive placement. Nothing in those statutes enables a trial court to do that. To begin with, section 39.812(1) provides:
If the department is given custody of a child for subsequent adoption in accordance with this chapter, the department may place the child with an agency as defined in s. 63.032, with a child-caring agency registered under s. 409.176, or in a family home for prospective subsequent adoption. The department may thereafter become a party to any proceeding for the legal adoption of the child and appear in any court where the adoption proceeding is pending and consent to the adoption, and that consent alone shall in all cases be sufficient.
(emphasis supplied). The statute further requires the trial court to review the status of the child until the child is adopted and to review the appropriateness of an adoptive placement. § 39.812(4), Fla. Stat. While sections 39.812(5) and 63.062(7) permit a court to deem that DCF’s consent may be waived if unreasonably withheld, nothing in these statutes provides that where DCF has consented to adoption by one family, it must also consent to the adoption by any other family. That would throw the adoption process into disarray. The trial court’s task is first to evaluate the appropriateness of the adoption to which DCF has given its consent. That is what the court did in this case. It found the adopting parents were an appropriate selection. The court acted in accordance with the law and within its jurisdiction.
We therefore affirm the order of the trial court determining that the adoption by the X’s was an appropriate placement. However, the court should have granted the motion to dismiss the H’s adoption petition, instead of determining that the motion to dismiss was moot. Without granting the motion and dismissing the petition, that petition remains pending in the court. Upon remand, the court should enter an order of dismissal of the H’s petition.

Affirmed.

MAY, J. and BID WILL, MARTIN, Associate Judge, concur.