LEWIS, J.
Petitioner, the Department of Children and Families (“Department”), seeks certio-rari review of the trial court’s Order Dismissing the Department’s Exceptions to the Report and Recommendation Entered on October 20, 2015, wherein the court also ratified, approved, and incorporated the magistrate’s report and recommendation. The Department argues that the trial court departed from the essential requirements of law by limiting the Department’s consideration of prospective adoptive homes for P.W., F.W., W.W.-l, W.W.-2, and J.W. (“Children”), a sibling group of five minor children in fits custody, to a particular family, in violation of the separation of powers doctrine. For the following reasons,' we* agree with the Department and grant the certiorari petition.'

Facts

The Children were sheltered in February 2013. By final judgment entered in October 2014, the trial court terminated the parental rights of the Children’s' parents and committed the Children to the permanent care and custody of the Department for the purposes of adoption. A family from Ohio (“Ohio Family”) expressed a desire to adopt the Children, whom they had fostered from approximately September 2009 to June'2011. In addition, a family from Pensacola, Florida (“Pensacola ‘ Family”) with an approved adoption home study responded to a statewide website recruitment effort for the sibling group and expressed an interest in adopting the Children. The Children are currently in three separate foster -homes in Bay County, Florida; arid they are bonded and have regular contact.' W.W.-l, W.W.-2, and J.W. are placed with the same foster parents (“Foster Parents”), while PW. and F.W. are placed' in two separate homes. W.W.-2 and J.W. have been with the Foster Parents since June 2014, and *1086 W.W.-l has been with them since March 2015.
In August 2015, the magistrate entered a Report and Recommendation on Judicial Review Hearing, wherein she recommended that the Department continue to have discretion to place the Children, in a potential adoptive placement within the State of Florida and the Children be permitted contact with both the Ohio Family and the Pensacola Family. The trial court ratified and adopted that report and recommendation. Following the Children’s contact with the Ohio Family, a clinical counselor for the Children indicated in a letter to the Life Management Center (“LMC”) that familial attachment between the Children and the Ohio Family was evident and the family should be considered as a potential placement.
In September 2015, Respondent, the Guardian Ad Litem Program (“GAL”), filed a Motion to Review the Status of the Children, the Progress Being Made towards Permanent Adoptive Placement, and the Appropriateness of the Proposed . Adoptive Placement, in which it argued that the initial contact between the Pensacola Family and the Children was cancelled by Adoption Services and that despite the reportedly positive contact between the Children and the Ohio Family, GAL had. concerns about the appropriateness of that placement based in part on .unsubstantiated allegations. Accordingly, GAL. sought an order requiring .immediate contact between the Children and the Pensacola Family and requiring the Department to exercise, its discretion to place the .Children in a potential adoptive home within Florida.
At the hearing on GAL’s motion, the Department represented that after consulting -with the Children’s therapists and foster parents, it determined that contact with both the Ohio Family and the Pensacola Family would be confusing and would not be in the Children’s best interests. The therapist and the Foster Mother for three of the Children, both LMC employees, testified that introducing the Children to multiple families could be confusing; the Children are scared of new situations; the Children believe they, or their biological parents, made up the accusations against the Ohio Family; and the Children expressed a desire to return to Ohio. Joel Booth, the former program administrator for LMC Adoption Services, testified that as the case progressed, there was reluctance in pursuing the Ohio Family because of the allegations the Children had made. The adoptions unit diligently investigated the allegations; and, after learning that the Ohio agencies believed the Ohio Family was “stellar” and wished to facilitate the Children’s return to the family, it was determined that supervised contact between the family and the Children would be' in the latter’s best interests so their reactions could be observed to determine if the family should be pursued. The visit with the Pensacola Family was subsequently cancelled pursuant to the . clinical recommendations, pf the Children’s counselors. The adoptions unit’s protocol is to not introduce two families simultaneously because it is very confusing to the children and puts them in a situation where they feel like they have to choose, and it is also borderline unethical with regard. to the families that are involved. Only the Pensacola Family, has an approved home study, and when asked whether the adoptions unit should have been dealing with only that family, Booth explained that he takes responsibility for the late web posting but that it is the adoptions unit’s practice to start with the family that has a connection to the children. Booth maintained that the adoptions unit was not in violation of its protocol by dealing with two families, that, the unit has not been sitting *1087 on the Pensacola Family’s home study for seven months given that it has been “in constant contact” with the family and had to vet the Ohio Family that had the Children for two years, and that comparing the two families is like comparing apples and oranges because the Children have a lot of history with the Ohio Family. Booth denied that the adoptions unit has been focusing on the Ohio Family to the exclusion of others and explained that the unit received and processed home studies and vetted families, but it had to start with the family that cared for the Children for two years.
On October 20, 2015, the magistrate entered a Report and Recommendation on GAL’s Motion, wherein she found in part as follows: The Children have been in foster care for over thirty months and have never been placed in the same home. The Pensacola Family has had an approved home study since late February 2015, and they have had ongoing contact with LMC staff, have been provided with detailed information about the Children, and have remained committed to adopting them. Further .consideration of the Ohio Family is not in the Children’s best interests. The adoption case plan has expired, the Pensacola Family’s. home study has been approved for over six months, and the Children continue to languish in three separate foster homes. Permanency for the Children “has been severely impacted and tragically delayed by the manner in which this case has been mishandled post TPR by the [DCF]/[LMC].” Had these entities' adhered “to their self-described protocol,”- the Children could have been placed together and the adoption could have been finalized prior to GAL’s motion.
The magistrate recommended as follows:
2. The Department/Adoption Services shall discontinue all efforts to place the subject children with their former foster parents in Ohio, either temporarily or permanently.
3. Within five (5) days from the date . this Report and Recommendation is ratified. by Order of this Court, the initial, personal contact between the [ ] children and the approved, prospective adoptive family from Pensacola, Florida shall- occur. Provided this first meetingis positive and appropriate and the prospective adoptive family desires to move forward, the Department/Adoption Services shall immediately implement the timeline/visi-tation plan which is attached to this Report and Recommendation and specifically incorporated herein by reference.
4. Based on the concerning history of this case, the discretion- previously granted to the Departmérít to place the children in a potential adoptive placement within the State of Florida is hereby expressly limited to the currently identified and approved, prospective adoptive family from Pensacola, Florida.
5. In the event the Department/Adoption Services does not place the children with the identified and approved prospective adoptive family from Pensacola, Florida on or before December 20, 2015, this matter .shall be returned to this Court on December 29, 2015 at 1:30 p.m. for entry of such further relief as this Court deems just and proper under the circumstances.
The visitation plan progressed from supervised daytime visitation with the Pensacola Family to unsupervised daytime visitation, followed by weekend and overnight visitations and then by extended visits during the upcoming holidays, and culminated in an expected placement by December 20; 2015.
The Department filed Exceptions to the Report and Recommendation, wherein it stated that following the hearing, the Foster. Parents submitted a formal application *1088 to adopt the Children; argued that while the Department was not challenging the magistrate’s decision to prohibit it from pursuing the Ohio Family, her recommendation directing the- Department to pursue an adoptive placement solely with the Pensacola Family violated the separation of powers doctrine; and requested it be granted discretion to place the Children in an approved adoptive placement in Florida and the modification of the visitation plan so as to reduce potential trauma to the Children in the event the Pensacola Family is not ultimately selected. The trial court entered an Order Dismissing the Department’s Exceptions to the Report and Recommendation Entered on October 20, 2015, wherein it found there was sufficient evidence to approve the magistrate’s report and recommendation and thus dismissed the exceptions; ratified, approved, and incorporated the magistrate’s report and recommendation; and ordered the parties to comply with all the findings and recommendations contained in the report.
On the same day, the Department filed a memorandum stating that the Foster Parents had applied to adopt the Children, the Children’s adoption specialist selected the Foster Parents as the adoptive family, a home study has been approved, and allowing the Foster Parents to adopt the Children would be in the Children’s best interests for the Foster Parents have a substantial relationship with and. attachment to each child. The Department also filed the Foster Parents’ approved adoption home study. The Department then filed an Emergency Motion for Rehearing Based upon New Evidence or in the Alternative Motion to Stay, asking the magistrate to modify the placement restrictions and rescind the visitation plan, or, in the alternative, to stay the trial court’s order, and noting that at the hearing on its exceptions, the trial court noted that the Foster Parents’ availability as a potential adoptive placement had not been presented to the magistrate and advised that it expected the Department to bring the issue before the magistrate. The Department then filed the Foster Parents’ Adoptive Home Application. According to the trial court docket entries, the Department’s emergency motion was set for a December - 29, -2015, hearing. Given the delay in the hearing on the emergency motion, which was to be heard after the Children were already supposed to have been placed with the Pensacola Family, this proceeding followed.[1]

Analysis

To obtain a writ of certiorari, á petitioner must show that the challenged order (1) constitutes a departure from the essential requirements of law, (2) resulting in material injury, (3) which cannot be remedied on appeal. Suarez v. Steward Enters., 164 So.3d 132, 134 (Fla. 1st DCA 2015); see also, e.g., Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLG, 99 So.3d 450, 454-55 (Fla.2012) (explaining that a reviewing court must first examine the last two prongs to determine whether there is irreparable harm, which is a condition precedent to invoking the court’s certiorari jurisdiction).
The Florida Constitution provides for the separation of powers among the three branches of ¡government as follows: “The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.” Art. II, § 3, Fla. Const. The Florida Supreme *1089 Court “has traditionally applied ‘a strict separation of powers doctrine/ ” which encompasses a prohibition on one branch encroaching on the powers of another. Fla. Dep’t of State, Div. of Elections v. Martin, 916 So.2d 768, 769 (Fla.2005) (internal citations omitted); see also Fla. Dep’t of Children & Families v. J.B., 164 So.3d 479, 481 (Fla. 3d DCA 2015) (quashing an order directing the Department to pay the travel costs of the Attorney Ad Litem for the purpose of facilitating/the child’s therapy upon concluding that the trial court violated the separation of powers doctrine because no statute authorized its directive) (internal citations omitted).
Chapter 63 of the Florida Statutes governs adoptions. The Legislature has made clear its “intent ... that in every adoption, the best interest of thé child should govern and be of foremost concern in the court’s determination.” § 63.022(2), Fla. Stat. (2015). “A case in which a minor becomes available for adoption after the parental rights of each parent have been terminated by a judgment entered pursuant to chapter 39 shall be governed by s. 39.812 and this chapter.” § 63.037, Fla. Stat. (2015). “If parental rights to the minor have previously been terminated, the adoption entity with which the minor has been placed for subsequent adoption may provide consent to the adoption. In such case, no other consent is required.” § 63.062(7), Fla. Stat. (2015). However, “[t]he consent of the department shall be waived upon a determination by the court that such consent is being unreasonably withheld and if the petitioner has filed with the court a favorable preliminary adoptive home study as required under s. 63.092.” Id.
Chapter 39, Florida Statutes, governs “Proceedings Relating to Children.” One of the purposes of that chapter is “[t]o ensure that permanent placement with the biological or adoptive family is achieved as soon as possible for every child in foster care and that no child remains in foster care longer than 1 year.” § 39.001(l)(h), Fla. Stat. (2015). “An agency granted legal custody shall have the right to determine where and-with whom the child shall live.”' § 39.521(4), Fla. Stat. (2015). Section 39.812, Florida Statutes (2015), the main statute at issue in this case, is titled “Postdisposition relief; petition for adoption” and provides in part:
(4) The court shall retain jurisdiction over any child placed in the custody of the department until the child is adopted. After custody of a child for subsequent adoption has been given to the department, the court has jurisdiction for the purpose of- reviewing the status of the child and the progress being made toward permanent adoptive placement. As part of this continuing jurisdiction, for good cause shown by the guardian ad litem for the child, the court may review the appropriateness of the adoptive placement of the child....
See also § 39.811(8), Fla. Stat. (2015) (“If the court terminates parental rights, it shall, in its order of disposition, provide for a hearing, to be scheduled no later than 30 days after the date of disposition, in which the department shall provide to the court an amended case plan that identifies the permanency goal for .the child. Reasonable efforts must be made to place the child in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the child. Thereafter, until the adoption of the child is finalized or the child reaches the age of 18 years, whichever occurs first, the court shall hold hearings at 6-month intervals to review the progress being made toward permanency for the child.”); § 39,811(9), Fla. Stat. (“After termination of parental rights, the court shall retain jurisdiction *1090 over any .child for whom custody is given to a social, service agency until the child is adopted. The court shall review the status of the child’s placement and the progress being made toward permanent adoptive placement. As part of this continuing jurisdiction, for good cause shown by the guardian ad litem for the child, the court may review the appropriateness of the adoptive placement. of the child.”); §.39.813, Fla. Stat.- (2015) (“The court which terminates the parental rights of a child who is the subject of termination proceedings pursuant to this chapter shall retain exclusive jurisdiction in all- matters pertaining to the child’s adoption pursuant to chapter 63.”).
As such, it is clear that “[u]nder Chapter' 39, the judicial and executive branches exercise concurrent jurisdiction over the welfare of foster children who have been placed in DCF’s . custody.” Dep’t of Children & Family Servs. v. Interest of J.C., 847 So.2d 487, 490 (Fla. 3d DCA 2002) (explaining that section 39.812(4) expressly authorizes the judiciary to exercise its review powers over the appropriateness of a Department-proposed adoptive- placement); • see also State, Dep’t of Children & Families v. Guardian Ad Litem of C.R., 855 So.2d 688, 689 (Fla. 1st DCA 2003). “The dependency court never loses jurisdiction after a TPR trial, and continues to retain exclusive jurisdiction throughout the adoption process. In fact, ⅛ circuit court has “inherent and continuing jurisdiction to entertain matters pertaining to child custody and to enter any order appropriate to a child’s welfare.’”” B.B. v. Dep’t of Children & Families, 854 So.2d 822, 825 (Fla. 1st DCA 2003) (citing sections 39.812(4) and 39.813 and quoting Henry & Rilla White Found., Inc. v. Migdal, 720 So.2d 568 (Fla. 4th DCA 1998)). “[F]or both the department and the courts, the paramount concern is expeditiously achieving permanent stability for the children, specifically, -achieving permanent placement within one year,” B.Y. v. Dep’t of Children & Families, 887 So.2d 1253, 1256 (Fla.2004) (citing section 39.001); see also C.M. v. Dep’t of Children & Family Servs., 854 So.2d 777, 779 (Fla. 4th DCA 2003) (“At all stages of the proceedings, courts are compelled to expedite proceedings to prevent children from languishing in the foster -care system_" Achieving permanent stability in the child’s life is the paramount concern of the judicial process.”). “Thus, it is the department’s role to protect the children in the State’s care and to select suitable and permanent placement for these.children,, and it is the courts’ role to oversee that the expeditious and suitable placement of these children is consistent with the policies of the state as .set forth by the Legislature.” 887 So.2d at 1256.
It is well-established that the trial court lacks'authority to interfere with the Department’s selection of a prospective adoptive family’ where that selection was appropriate, consonant with its policies, and made in an expeditious manner. See B.B., 854 So.2d at 826 (stating samé); R.H. v. Dep’t of Children & Families, 988 So.2d 673, 678 (Fla. 4th DCA 2008) (affirming an order finding the Department’s selection of the child’s current foster parents an appropriate adoptive placement and approving the adoption; rejecting the appellants’ argument that the trial court erred by limiting its review to the appropriateness of the Department’s selection instead of determining which of the two competing petitions for adoption was in the child’s best interest; and explaining that'“there is simply no case law or statutory authority that vests a trial court with the authority to choose between two competing petitions to adopt. Rather, this court has consistently held that where DCF’s consent is appropriate, a trial court does not have the *1091 authority to place a. child with another family”); Fla. Dep’t of Children & Families v. Adoption of B.G.J., 819 So.2d 984, 986 (Fla. 4th DCA 2002) (reversing an order granting the foster parents the right to proceed with adoption because the trial court did not have the authority to place the child for adoption with the foster parents when that decision was contrary to the Department’s appropriate selection of another family as the adoptive placement); C.S. v. S.H., 671 So.2d 260, 262 (Fla. 4th DCA 1996) (reversing a judgment of adoption in favor of the foster parents because the trial court lacked authority to interfere with the Department’s predecessor’s decision to select the biological relatives as the prospective' adoptive parents where that selection was appropriate, consonant with its policies, and made in an expeditious manner, and. explaining that the trial court’s continued jurisdiction under the statutes does not extend to the selection of adoptive parents). Cf. Guardian Ad Litem of C.R., 855 So.2d at 689 (affirming an order that disapproved the Department’s prospective adoptive placement; holding that “the trial court did not exceed its jurisdiction [under section 39.812(4)] by considering the children’s best interests and balancing the risk of harm when it reviewed the appropriateness of the prospective adoptive placement”; and distinguishing Adoption ofB.G.J. and C.S. “because they involve reversals of trial court orders that approved adoption petitions filed by persons other than those whom DCF had recommended for the adoptive placements. As such, they pertained to situations in which DCF’s chosen placement was overruled by the trial courts, which then substituted their judgment on the issue of where and with whom the child should be placed. Although the trial court in this case did reject DCF’s approved adoptive placement, it did so upon a finding that it was not appropriate and not in the children’s best interests, and, more to the point, the court did not direct that the children be placed in the custody of someone whom DCF had disapproved”).
However, the Department’s consent to an adoption -is not required ¡when the trial court, finds that the Department unreasonably withheld its consent. See § 63.062(7), Fla. Stat.; see also B.Y., 887 So.2d at 1256-57 (finding that the trial court acted consistently with its statutory authority by finalizing the children’s adoption by the grandmother absent the ■ Department’s consent where the Department had endorsed the grandmother as the appropriate caregiver and its only concern was her temporary: housing .situation, the children had been wards of the state for more than a year, and the trial court found it was in the children’s best interests to finalize the adoption because the court “effectively held that the department acted unreasonably by withholding consent to1 the final adoption,” and noting that “[failure to finalize the adoption in this case would have been inconsistent with the goal of expeditiously providing a .stable and permanent home for these children”); B.B., 854 So.2d at 826 (explaining that because the Depart-; ment did not object at the termination-of parental rights trial to the trial court’s order that the - appellant be given the opportunity to adopt the children and did not subsequently appeal the order, it waived any objection to- the order and its only option was to comply with it, and reversing the denial of the appellant’s petition to adopt upon finding that “DCF failed to meet-the requirements necessary to .qualify ¡for the deference [it] seek[s]” because its .choice of a non-relative adoptive placement was not appropriate- under the facts of the case given that it failed to comply with , the trial-court’s order to give the appellant-an oppbrtunity to adopt and was not consonant , with its policy and Florida *1092 law that relatives are the placement of choice). ■
Here, the Department had not selected a prospective adoptive family as it was still in the process of considering both the Ohio Family and the Pensacola Family; as such, it also had not unreasonably withheld its consent to adoption by the Pensacola Family, who had not filed a petition for adoption. Pursuant to the provisions of Chapter 39, the trial court properly exercised its continuing jurisdiction in reviewing the status of the Children and the progress being made toward permanent adoptive placement. Had the Department selected the-Ohio Family as the adoptive placement for the Children, the trial court’s jurisdictibn would have extended, upon good cause shown by GAL, to reviewing the appropriateness of- that placement; which the Department correctly recognizes and thus does' not challenge the court’s decision to prohibit it from pursuing the Ohio Family. Moreover, given that the Children had been in foster care for over a year, in violation of the legislative intent, the trial court was legitimately concerned about the delay in securing a permanent placement for them. As a result, the trial court could have compelled the Department to make an expeditious selection of an adoptive family. See C.S., 671 So.2d at 269 (explaining that “[w]hile the trial court may have authority in its continuing supervisory jurisdiction under subsection 39.47(4) [now section 39.812(4)] to compel HRS [the Department’s predecessor] to make a selection of an adoptive parent if HRS has not acted expeditiously or to disapprove an inappropriate selection,” a trial court does not have the authority to waive HRS’s consent and thereby override Chapter 39). However, the trial court exceeded its jurisdiction by instead limiting the Department’s discretion in placing the Children in a potential adoptive home to the Pensacola Family. The trial court in effect selected the Children’s adoptive home, and did so without making any findings as to their best interests in relation to that family, and also precluded the Department from considering the Children’s best interests in placing them.

Conclusion

For the. foregoing reasons, we agree with the -Department that the trial court departed from the essential requirements of law in limiting the Department’s discretion in placing the Children in a potential adoptive home to the Pensacola Family. Therefore, we GRANT the certiorari petition and QUASH the trial court’s order.
SWANSON and WINOKUR, JJ., concur. ■

. We granted the Department's motion to stay the trial court’s order, including the visitation plan, pending disposition of the certiorari petition.