887 So.2d 1253 (2004)
B.Y., the grandmother, Petitioner,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Respondent.
No. SC04-258.
Supreme Court of Florida.
November 10, 2004.
*1254 Michelle Hankey, William Booth, Maxine Williams, and Barbara Briggs of Legal Aid Society of Palm Beach County, Inc., West Palm Beach, FL, for Petitioner.
Jeffrey Dana Gillen, Crystal Y. Yates-Hammond and Josefina Tamayo, West Palm Beach, FL, for Respondent.
QUINCE, J.
We have for review Department of Children & Family Services v. B.Y., 863 So.2d 418 (Fla. 4th DCA 2003), which expressly and directly conflicts with the decisions in In re Adoption by Alexander, 206 So.2d 452 (Fla. 2d DCA 1968), and B.B. v. Department of Children & Families, 854 So.2d 822 (Fla. 1st DCA 2003). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons more fully set forth below, we quash the decision of the Fourth District Court of Appeal and hold that under the circumstances of this case, *1255 the trial court acted appropriately to finalize the adoption.

The Facts
In September 2001, the Department of Children and Families took custody of J.L.P., B.D.P., and J.S.P., the children in this case. The children were adjudicated dependent and remained in the protective custody of the department until they were placed with their grandmother, B.Y.[1] In March 2002, the department undertook a preliminary home study in anticipation of the placement of the children with B.Y. The study was favorable, and B.Y. was awarded temporary custody. B.Y. had relocated from Pennsylvania to take care of the children and was assisted by a transitional housing program sponsored by the YWCA of Palm Beach County. This transitional housing was provided for up to two years. The department considered the placement with B.Y. to be a suitable permanent custody arrangement for the children. In anticipation of adoption by B.Y., parental rights were terminated. The guardian ad litem fully supported placement with B.Y., stating that B.Y. was a loving parent and the children were in a loving home.
At the final adoption hearing, however, the department refused to consent to the adoption, arguing that a final home investigation was required but had not been and could not be conducted because B.Y. was in temporary housing. The department also argued that adoption subsidies would not be payable to B.Y. in the absence of its consent to the adoption, and subsidies could not be applied for because B.Y.'s fingerprints, necessary for the application process, had been damaged. In response, the attorney ad litem for the three children argued that a final home investigation was not required under section 63.125, Florida Statutes (1999), because B.Y. was within the third degree of consanguinity with two of the children. The trial court ruled that no home investigation was required in this case. After resolving the fingerprint problems, the judge ordered the parties to return the following week for finalization. The parties returned, and the department again refused to consent to the adoption because B.Y. had not obtained permanent housing and the home investigation had not been completed. The trial court reiterated its prior rulings and finalized the adoption without the department's consent.
On appeal, the Fourth District reversed and held that the department's consent was mandatory and that absent the department's consent, the trial court could not finalize the adoption. We quash the Fourth District's decision.

Law and Analysis
The standard of appellate review on issues involving the interpretation of statutes is de novo. See State v. Burris, 875 So.2d 408, 410 (Fla.2004) ("This question of statutory interpretation is subject to de novo review."); In re Guardianship of J.D.S., 864 So.2d 534, 537 (Fla. 5th DCA 2004) ("Because this case involves the application of statutory law, and is a pure question of law, the standard of review is de novo."). The department argues that the statutes found in chapters 39 and 63, Florida Statutes (2002), require the department's consent before an adoption can be finalized. B.Y. argues that the statutes make the department's consent permissive but not necessary.
The first stated goal of chapter 39, Florida Statutes, is "to provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; *1256 to ensure secure and safe custody; and to promote the health and well-being of all children under the state's care." § 39.001(1)(a), Fla. Stat. (2002). The department's role in achieving this goal is important, and the department does a tremendous service by providing care, safety, and protection to the children in its custody. In addition to the State's statutory responsibilities, the courts also have statutory responsibilities for these children. The courts are charged with the duty of ensuring that the best interests of the children are advanced. See In re Adoption of Doe, 543 So.2d 741 (Fla.1989) (stating that the best interest of the child in adoption proceedings is the paramount consideration); see also, §§ 63.022(2)(l), 63.122(5), 63.142(4), Fla. Stat. (2002). This duty exists during the dependency proceedings, and continues through the adoption proceedings. See B.B. v. Dep't of Children & Families, 854 So.2d 822, 825 (Fla. 1st DCA 2003) (finding that the dependency court is not divested of jurisdiction after a termination of parental rights trial and retains exclusive jurisdiction throughout the adoption process).
Furthermore, for both the department and the courts, the paramount concern is expeditiously achieving permanent stability for the children, specifically, achieving permanent placement within one year. See § 39.001(1)(h)-(i), Fla. Stat. (2002); see also C.M. v. Dep't of Children & Family Servs., 854 So.2d 777, 779 (Fla. 4th DCA 2003) ("[C]ourts are compelled to expedite proceedings to prevent children from languishing in the foster care system.... Achieving permanent stability in the child's life is the paramount concern of the judicial process."). Thus, it is the department's role to protect the children in the State's care and to select suitable and permanent placement for these children, and it is the courts' role to oversee that the expeditious and suitable placement of these children is consistent with the policies of the state as set forth by the Legislature. In order to fulfill its role, the court has "inherent and continuing jurisdiction to entertain matters pertaining to child custody and to enter any order appropriate to a child's welfare." B.B. v. Dep't of Children & Family Servs., 854 So.2d 822, 825 (Fla. 1st DCA 2003) (quoting Henry & Rilla White Found., Inc. v. Migdal, 720 So.2d 568, 573 (Fla. 4th DCA 1998)).
The courts' continuing jurisdiction is supported by the various statutory provisions of chapters 39 and 63. For example, section 39.812(4), Florida Statutes, states that "[t]he court shall retain jurisdiction over any child placed in the custody of the department until the child is adopted," and section 39.813 provides that "[t]he court which terminates the parental rights of a child who is the subject of termination proceedings pursuant to this chapter shall retain exclusive jurisdiction in all matters pertaining to the child's adoption pursuant to chapter 63." Additionally, the court is statutorily required to enter orders necessary to protect the best interests of the children involved in adoption proceedings. See § 63.022(2)(l), Fla. Stat. (2002) ("In all matters coming before the court under this chapter, the court shall enter such orders as it deems necessary and suitable to promote and protect the best interests of the person to be adopted.").
In this case, the children were removed from their mother's care and were adjudicated dependent. When the paternal grandmother learned that the children were in the department's care, she relocated from Pennsylvania to Florida with the intent of adopting the children. She visited the children at least two times a week. After a preliminary home study was found to be favorable, B.Y. was awarded temporary custody. Upon obtaining temporary *1257 custody of the children, B.Y. began living in a transitional housing program which provided her with housing for up to two years. All parties proceeded with the goal of permanent placement with the grandmother, and this goal was enthusiastically supported by the guardian ad litem. The department's only concern was the grandmother's temporary housing situation. The record indicates that the grandmother was participating in a program which provided housing for up to two years, and that she followed the program requirements. However, the department seemed to equate the temporary nature of the housing program with instability, and argued that the risk of B.Y. becoming financially unable to care for these children prevented its consent to the final adoption. At the time of the final hearing, the children had been wards of the state more than one year, longer than the optimum time limit set by the Legislature for permanent placement. With the nature of B.Y.'s housing being the only obstacle expressed by the department for permanency, the trial court made a finding that it was in the children's best interests to finalize the adoption. In so doing, the trial court effectively held that the department acted unreasonably by withholding consent to the final adoption.[2]
We find that the trial court acted within its authority in finalizing the adoption without the department's consent when, as in this case, the trial court found that withholding consent was unreasonable. The trial court's order advanced the best interests of these children, and the adoption was consistent with the stated legislative policies. By denying its consent in this case, the department was well-intentioned. However, the Legislature has mandated the court's continuing jurisdiction to advance the children's best interests. The court in this case fulfilled its responsibilities by ensuring that the termination of parental rights and subsequent adoption were done appropriately, consonant with the department's policies and in an expeditious manner. The record demonstrates that the trial court considered the appropriateness of placing these children with B.Y., considered B.Y.'s financial resources, and was aware of B.Y.'s temporary housing situation. In addition, the court considered the department and the guardian ad litem's endorsement of B.Y. as the appropriate caregiver and the department's preliminary home study finding B.Y. to be a suitable parent. Failure to finalize the adoption in this case would have been inconsistent with the goal of expeditiously providing a stable and permanent home for these children.

Conclusion
For these reasons, we quash the decision of the Fourth District Court of Appeal. We hold that the trial court in this case acted consistently with the stated legislative policies and within its statutory authority to advance the best interests of the children.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, CANTERO, and BELL, JJ., concur.
CANTERO, J., concurs with an opinion, in which, PARIENTE, C.J., concurs.
*1258 CANTERO, J., concurring.
The critical question in this case is whether a trial court may finalize the adoptions of children for whom parental rights have been terminated, despite the refusal of the Department of Children and Families to consent to the adoptions. I agree with the majority that a court may finalize these adoptions without the department's consent. I write separately, however, to explain in greater detail why this holding follows from the adoption statute.
The statutes that provide for the department's consent to adoptions of children in its custody are permissive, not mandatory. The department "may provide consent to the adoption." § 63.062(7), Fla. Stat. (2003) (emphasis added); see also id. § 39.812(1) ("The department may thereafter ... consent to the adoption....") (emphasis added). If the department does consent, then "that consent alone shall in all cases be sufficient," id. § 39.812(1), and "no other consent is required," id. § 63.062(7). If the department withholds its consent, however, the permissive phrasing of the statute indicates that the trial court may nevertheless grant the adoption. In other words, the department's consent is a sufficient, but not a necessary, condition for a court to finalize the adoptions of children for whom parental rights have been terminated.
Despite this permissive phrasing, the department contends that the Legislature intended to give the department a veto power over adoptions. The department cites section 39.812(5), Florida Statutes (2003), which states that a "copy of the consent executed by the department as required under section 63.062(7) must be attached to the [adoption] petition." Id. (emphasis added). According to the department, the mandatory language of section 39.812(5) supersedes the permissive language of sections 63.062(7) and 39.812(1).
This argument overlooks a fundamental principle of statutory construction  that courts should favor an interpretation that harmonizes potentially conflicting statutory provisions. See, e.g., Fla. Convalescent Ctrs. v. Somberg, 840 So.2d 998, 1008 (Fla.2003) ("Courts are obligated `to adopt an interpretation that harmonizes two related, if conflicting, statutes while giving effect to both.'") (quoting Palm Harbor Special Fire Control District v. Kelly, 516 So.2d 249, 250 (Fla.1987)). The provisions addressing the department's consent are easily harmonized. Section 39.812(5) states that a "copy of the consent executed by the department as required under section 63.062(7)" must be attached to the adoption petition. This does not necessarily mean that the department's consent is always required under section 63.062(7). A more harmonious interpretation is that the department's consent must be attached to the adoption petition only to the extent it is required under section 63.062(7). The statute's other provision addressing the content of adoption petitions confirms such an interpretation. See § 63.112(2)(a), Fla. Stat. (2003) (explaining that an adoption petition must include "the required consent, unless such consent is excused by the court").
Even if these provisions could not be so harmonized, they remain, at best, ambiguous. No provision unequivocally requires the department's consent to adoptions. In the absence of a clear legislative statement to that effect, granting the department a veto power over adoption determinations would contradict the broader statutory scheme, which focuses on the best interests of the child.
When faced with an apparent ambiguity or conflict within a statute, "courts must consider the statute as a whole." Bautista *1259 v. State, 863 So.2d 1180, 1185 (Fla.2003) (quoting State v. Anderson, 764 So.2d 848, 849 (Fla. 3d DCA 2000)). The adoption statute, when considered as a whole, clearly expresses the Legislature's intent to allow trial courts to bypass non-parental consent requirements when it is in the children's best interests.[3] One provision, for example, allows the trial court to waive the consent of any non-parental legal guardian or custodian who, after receiving notice, "is found by the court to be withholding his or her consent unreasonably." § 63.064(4), Fla. Stat. (2003). An analogous provision allows the consent of the adopted person's spouse to be waived if it is being unreasonably withheld. Id. § 63.064(5). Yet another provision allows parental rights pending adoption to be terminated "if written consent has been executed... or notice has been served" to the listed parties. Id. § 63.062(1) (emphasis added). In the absence of a clear statement to the contrary, it is safe to assume that the Legislature also intended for the trial court to bypass the department's consent when it is in a child's best interests.
As the majority notes, Majority op. at 1257 note 2, the Legislature's recent amendments to the statute support this reading. See Ch.2004-389, §§ 1-2, Laws of Fla. Although not retroactive to this case, the amendments effectively resolve the statutory ambiguities concerning the department's consent. Cf. Finley v. Scott, 707 So.2d 1112, 1116 (Fla.1998) ("Although the 1993 statute applies to this case, we accept the [subsequent] addition of [a] sentence to the statute as clarifying legislative intent."). The new section 63.062(7), Florida Statutes (2004), which became effective on July 1, 2004, contains the following language:
The consent of the department shall be waived upon a determination by the court that such consent is being unreasonably withheld, provided that the petitioner has filed with the court a favorable preliminary adoptive home study performed by [one of various licensed agencies].
See also id. § 39.812(5) (containing a new waiver provision with similar wording).
If the 2004 amendments had been effective when the trial court finalized the adoptions in this case, the trial court clearly would have been justified in waiving the department's consent. The petitioner in this case already had obtained a favorable preliminary adoptive home study from the department in March 2002. The department then refused to consent to the adoptions due to the lack of a favorable final home study, even though two of the three adoptions in this case were exempt from such a study because of the children's blood relationship with the petitioner. See § 63.125(1), Fla. Stat. (2003) ("Unless directed by the court, a [final home] investigation and recommendation are not required ... if the minor is related to one of the adoptive parents within the third degree of consanguinity."). It would be unreasonable for the department to withhold its consent simply because the petitioner failed to obtain a report that the Legislature had explicitly exempted her from having to obtain.
While the 2004 amendments do not control this case, they are consistent with our interpretation of the pre-amendment statute. *1260 The purpose of the consent provisions is for the department, with its expertise in family matters, to aid the trial court in its determination, not to immobilize it. The 2004 amendments make explicit what was formerly implicit in the statutory scheme: that the department, like every other non-parent involved in an adoption proceeding, cannot unreasonably thwart an otherwise beneficial adoption. Thus, the trial court's decision to finalize the adoptions in this case, despite the department's unreasonable withholding of consent, was justified.
PARIENTE, C.J., concurs.
NOTES
[1] Two of the three children are actually B.Y.'s grandchildren.
[2] Our holding is consistent with the 2004 legislative amendment to section 39.812 which, in discussing the court's continuing jurisdiction in adoption matters, clarifies that a copy of the department's consent must be attached to the adoption petition "unless the court determines that such consent is being unreasonably withheld and provided that the petitioner has filed with the court a favorable preliminary adoptive home study performed by a licensed child-placing agency, a child-caring agency registered under s. 409.176, or a licensed professional or agency described in s. 61.20(2)." § 39.812(5), Fla. Stat. (2004).
[3] For obvious reasons, parental consent is treated more deferentially than non-parental consent. Parental consent may be waived only if (1) the parent has deserted or abandoned the child; or (2) parental rights have been terminated by a court; or (3) the parent has been judicially declared incompetent and is medically unlikely to regain competence. § 63.064(1)-(3), Fla. Stat. (2003).