907 So.2d 696 (2005)
Royal Steve JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-3693.
District Court of Appeal of Florida, Fourth District.
August 3, 2005.
Carey Haughwout, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Royal Steve Jackson was charged by amended information with one count of sexual battery and one count of burglary of a dwelling with assault or battery. He was found guilty of both charges after a jury trial. Jackson was sentenced to 15 years in prison on Count I, and life imprisonment on Count II, to be served concurrently with the sentence for Count I. These sentences were originally imposed on December 18, 2003. Thereafter, on January 7, 2004, the trial court nunc pro tunc declared Jackson a "sexual predator," pursuant to section 775.21, Florida Statutes (2000). Subsequently, the state moved to have Jackson "chemically castrated," *697 pursuant to section 794.0235, Florida Statutes (2000).[1] As a consequence, the trial court ordered the Florida Department of Corrections to conduct a medical evaluation "by a medical expert" to establish whether Jackson was "an appropriate candidate for chemical castration." This order was dated March 23, 2004.
A hearing on the state's motion was held on August 11, 2004. During this hearing, defense counsel for Jackson agreed that Jackson had a sufficient number and category of sexual offenses to qualify for "chemical castration" sentencing and further stipulated to the introduction of a fax from the Florida Department of Corrections into evidence. The document indicated that a medical examination of Jackson on June 14, 2004, found that Jackson "had no symptoms or problems" relative to such a medical procedure. However, defense counsel did object to Jackson's sentencing under section 794.0235, Florida Statutes, arguing that this statute required, as a prerequisite, that the medical examination occur within 60 days of sentencing.
Although the state conceded factually that Jackson's medical examination did not occur within 60 days of his sentencing, the trial court overruled defense counsel's objection, finding that the 60-day time period was not mandatory. As a result, the trial court issued an order on September 30, 2004,[2] which sentenced Jackson to be treated with medroxyprogesterone acetate according to a schedule of administration monitored by the Department of Corrections.
Jackson argues that the trial court erred in overruling his objection to the state's request for an order to have him chemically castrated as a part of his sentence for sexual battery because the prerequisite medical examination of Jackson did not occur within 60 days of imposition of his sentence, as mandated by section 794.0235. We agree and reverse.
The standard of review for issues involving the interpretation of statutes is de novo. See B.Y. v. Dep't of Children & Families, 887 So.2d 1253 (Fla.2004).
*698 The state argues that although MPA treatment must be contingent upon a determination by a court appointed medical expert that the defendant is an appropriate candidate for treatment, the requirement that the "determination is to be made not later than 60 days from the imposition of sentence" is intended by the legislature to be discretionary and not mandatory. The state asserts that the phrase "is to be made" with emphasis on the word "is" connotes discretion as opposed to the word "shall" which expresses a mandatory application. The state argues that if the legislature had intended for the 60-day time period to be mandatory, it would have stated that the determination "shall" be made not later than 60 days from the imposition of the sentence. We decline the state's invitation to parse this provision in such a fashion.
When interpreting a statute and attempting to discern legislative intent, courts must first look at the actual language used in a statute. See Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000). If the language contained in the statute is clear and unambiguous, courts must derive legislative intent from the words used without involving rules of construction or speculating as to what the legislature intended. See State v. Dugan, 685 So.2d 1210, 1212 (Fla.1996).
We acknowledge there appears to be some incongruity in the statute. For example, in section 794.0235(2)(b), the statute speaks to cases involving defendants who are sentenced to a period of incarceration and notes that treatment with MPA shall commence not later than one week prior to the defendant's release from prison or other institution. Depending upon the period of incarceration, it seems odd that the legislature would require the treatment of MPA to commence not later than one week prior to the defendant's release from incarceration and at the same time require the determination whether such treatment would be appropriate for a particular defendant to be made not later than 60 days from the imposition of the sentence.
For example, if a defendant were to be incarcerated for ten years, and the chemical castration was to commence shortly before the defendant was to be released, it would seem more appropriate to make the medical determination closer in time to the release date. It could very well be that with the passage of time the medical determination that the defendant is an appropriate candidate for MPA will have changed during the time from the date of imposition of the sentence until the date of release from incarceration.
Nevertheless, the legislature stated that the MPA treatment "shall be contingent upon a determination by a court appointed medical expert, that the defendant is an appropriate candidate for treatment" and that "[s]uch determination is to be made not later than 60 days from the imposition of sentence." § 794.0235(2)(a), Fla. Stat. Had the legislature intended for the 60-day requirement to be discretionary so that the determination could be made more than 60 days after the imposition of sentence, it could have clearly stated that fact. If we are to read into the statute that the determination is to be made not later than 60 days from the imposition of the sentence as discretionary, then it would make the 60-day time period meaningless. We cannot conclude without a clear expression from the legislature that it intended the 60-day period to be a nullity.
We also note that the trial court failed to comply with section 794.0235(2)(a) in that it failed to "specify the duration of treatment for a specific term of years, or in the discretion of the court, up to the life of the defendant." This is directly contrary *699 to the requirements of the statute and also requires reversal of the order for MPA treatment. See Houston v. State, 852 So.2d 425, 428 (Fla. 5th DCA 2003).
Reversed.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] That section provides in pertinent part:

(1) Notwithstanding any other law, the court:
...
(b) Shall sentence a defendant to be treated with medroxyprogesterone acetate (MPA), according to a schedule of administration monitored by the Department of Corrections, if the defendant is convicted of sexual battery as described in s. 794.011 and the defendant has a prior conviction of sexual battery under s. 794.011 ...
(2)(a) An order of the court sentencing a defendant to medroxyprogesterone acetate (MPA) treatment under subsection (1), shall be contingent upon a determination by a court appointed medical expert, that the defendant is an appropriate candidate for treatment. Such determination is to be made not later than 60 days from the imposition of sentence. Notwithstanding the statutory maximum periods of incarceration as provided in s. 775.082, an order of the court sentencing a defendant to medroxyprogesterone acetate (MPA) treatment shall specify the duration of treatment for a specific term of years, or in the discretion of the court, up to the life of the defendant.
(b) In all cases involving defendants sentenced to a period of incarceration, the administration of treatment with medroxyprogesterone acetate (MPA) shall commence not later than one week prior to the defendant's release from prison or other institution.
(emphasis added).
[2] The Order For Treatment With MPA states:

THIS CAUSE came on to be heard on the State's Motion and the Court being otherwise fully advised in the premises, it is hereby;
ORDERED AND ADJUDGED that the State's Motion is hereby granted. The defendant is hereby sentenced to be treated with medroxyprogesterone acetate (MPA) according to a schedule of administration monitored by the Department of Corrections, as to this sentence only.