CASANUEVA, Judge.
The Department of Children and Family Services and A.M., the unmarried biological father of J.T., challenge the circuit court’s decision to “relinquish its jurisdiction” to another division of the circuit court after Heart of Adoptions, Inc., was permitted to intervene in this dependency case. At the time that Heart of Adoptions entered this case, J.T. was almost oneyear old. She had been placed in emergency shelter care at birth because her birth mother, R.T., was homeless and tested positive for drugs. Her biological father’s *1214 history, like her birth mother’s, included drug and alcohol abuse, mental illness, and incarceration. By the time J.T. was one month old on January 26, 2005, she had been declared a dependent child and placed in a foster home, where she has lived ever since.[1]
The Department developed case plans with a goal of reunification for the birth mother and the biological father, with an anticipated completion date of December 29, 2005. It is apparent from the appendices submitted by the parties that neither R.T. nor A.M. substantially complied with the case plans. In September 2005, when J.T. was approximately nine months old, R.T. decided to sign surrenders of her parental rights to Heart of Adoptions. Although the birth mother’s counsel notified the Department and the Guardian ad Litem that R.T. had signed surrenders, the attorney apparently did not immediately reveal that the surrenders were in favor of a private adoption agency. That information came to light in early December 2005, when Heart of Adoptions filed its petition to intervene in and to dismiss the dependency action. As an alternative to dismissal, Heart of Adoptions sought relinquishment of the dependency court’s jurisdiction to the family court division of the circuit court.
After a judicial review hearing in the case during the morning of December 14, 2005, the circuit court heard Heart of Adoptions’ petition to intervene that afternoon. At the intervention hearing, the circuit court observed that the biological father had only partially complied with his case plan but also — and even more significantly — that he wanted J.T. to be adopted by the foster parents who had taken care of her almost her entire life. With reluctance, the circuit court granted Heart of Adoptions’ petition to intervene and relinquished jurisdiction to the circuit court’s family division for further proceedings. Rather than immediately transferring custody of the child to Heart of Adoptions, however, the circuit court did not disturb J.T.’s situation; she remained in the foster parents’ care under the Department’s supervision.
Almost immediately, the Department and A.M. appealed the circuit court’s rulings (consolidated case numbers 2D06-297 and 2D06^416). Before the appellees had filed their briefs in this court, the circuit court, in the context of a hearing on the Department’s motion to stay, decided to reverse its earlier decision. Accordingly, on February 16, 2006, the circuit court entered an order retaining jurisdiction in the dependency court for further proceedings in this matter, which the birth mother appealed (case number 2D06-1037, later converted by this court to a petition for certiorari). Then, both the birth mother and Heart of Adoptions filed petitions for writs of certiorari, mandamus and/or prohibition directed to the circuit court’s February 2006 order (consolidated case numbers 2D06-1220 and 2D06-1523). This court directed that all of these related matters be considered by one panel and has now consolidated all of these cases for purposes of this opinion.
For the reasons that follow, we hold that this court lacks jurisdiction to consider the appeals filed by the Department and A.M., and we convert those appeals to petitions for certiorari. We also hold that the December 2005 order does not merit certiora-ri review and deny the petitions. Our denial of the Department’s and A.M.’s peti *1215 tions renders moot any jurisdictional problem in the circuit court’s reversal of itself in the February 2006 order.. Therefore, we also deny R.T.’s and Heart of Adoptions’ petitions for certiorari and/or mandamus or prohibition. The effect of all these decisions is that the dependency court maintains its jurisdiction over J.T.’s case, at least for the present.
The December 2005 Order
The Department and A.M. confront a critical obstacle in their challenge to the December 2005 order. The impediment derives from the fact that the court’s order is merely a preliminary procedural step on the way to the order that they ultimately want to challenge — a decision that a private adoption is in J.T.’s best interest pursuant to section 63.082(6)(c), Florida Statutes (2006). The Department does not and acknowledges that it cannot challenge the propriety of permitting Heart of Adoptions to intervene in the dependency action pursuant to section 63.082(6)(b), which provides as follows:
Upon execution of the consent of the birth parent, the adoption entity shall be permitted to intervene in the dependency case as a party in interest and shall provide the court having jurisdiction over the minor pursuant to the shelter or dependency petition filed by the department with a copy of the preliminary home study of the prospective adoptive parents and any other evidence of the suitability of the placement.... A preliminary home study must be provided to the court in all cases in which an adoption entity has intervened pursuant to this section.
Heart of Adoptions provided the circuit court with the statutorily required home study. However, the circuit court specifically halted the process before taking the next steps as required by section 63.082(6)(c):
Upon a determination by the court that the prospective adoptive parents are properly qualified to adopt the minor child and that the adoption appears to be in the best interest of the minor child, the court shall immediately order the transfer of custody of the minor child to the prospective adoptive parents, under the supervision of the adoption entity....
Making the best-interest determination under section 63.082(6)(c) would require the circuit court to analyze the factors set out in section (6)(d) as follows:
In determining whether the best interest of the child will be served by transferring the custody of the minor child to the prospective adoptive parent selected by the birth parent, the court shall give consideration to the rights of the birth parent to determine an appropriate placement for the child, the permanency offered, the child’s bonding with any potential adoptive home that the child has been residing in, and the importance of maintaining sibling relationships, if possible.
We have quoted these statutes in detail to demonstrate how little the circuit court’s December 2005 order actually accomplished. Although much was anticipated by the court’s relinquishment of its jurisdiction, nothing happened that this court has any authority to review. This is because the order merely transferred this matter to another division of the circuit court, and such a transfer is a matter wholly under the purview and within the discretion of the chief judge of the circuit court. All judges of a circuit court are authorized to exercise a circuit court’s jurisdiction. See In re: Guardianship of Bentley, 342 So.2d 1045, 1046 (Fla. 4th DCA 1977). But “for efficiency in administration, the Circuit Court is frequently divided into divisions, with each division han *1216 dling certain types of cases.” Id. at 1046-47. According to newly renumbered Rule of Judicial Administration 2.215(4), “[t]he chief judge shall assign judges to the courts and divisions, and shall determine the length of each assignment.... If a judge is ... unable to perform the duties of the office, the chief judge or the chief judge’s designee may assign a proceeding pending before the judge to any other judge ... of the same court.” In re: Amendments to the Florida Rules of Judicial Administration — Reorganization of the Rules, 939 So.2d 966, 980 (Fla.2006). We note that the Third Amended Administrative Order No. 2005-18.4 of the Twelfth Judicial Circuit established five administrative divisions: civil, criminal, family, juvenile, and probate/guardianship. Nothing prohibits any circuit judge of any division, with the permission of the chief judge, from hearing a case originally assigned to the dependency division.
This court recently discussed the divisional “jurisdiction” of the circuit courts in matters of this type in Adoption Miracles, LLC v. S.C.W. (In the Interest of S.N.W., a child), 912 So.2d 368, 373-74 (Fla. 2d DCA 2005), in which we observed that the dependency court and the adoption court are one court separated into different divisions. As in this case, the child had been placed in the Department’s custody pursuant to shelter and dependency petitions before the birth mother signed her consent to the child’s adoption. Thus, we noted, Adoption Miracles
was required to intervene in the dependency proceeding to pursue the adoption of the child ... [and] the dependency court may address the validity of the consent within the dependency proceeding. This framework permits the pursuit of the adoption while ensuring the continued protection of the child in the event the adoption is not achieved.
Id. Had Adoption Miracles filed its petition for termination of parental rights pursuant to adoption in another division of the same circuit court, the adoption proceedings would be secondary to the dependency proceedings. Id. Thus, no matter in which division an adoption petition is filed, the dependency proceedings will take precedence.
Appellate Court Jurisdiction Over Order Relinquishing Jurisdiction From One Division To Another of the Same Circuit Court
In Adoption Miracles, the circuit court denied the adoption agency’s petition to intervene in the dependency proceedings. Although the adoption agency filed its case as an original proceeding, this court concluded that “the order is a final order as to Adoption Miracles and thus subject to appeal.” Id. at 370.
The situation in this case is different. The circuit court’s order permitting intervention but also relinquishing jurisdiction or transferring the case to another division was not final as to any party. In fact, as we have noted above, intervention by the adoption agency is merely a preliminary step before any circuit court division has jurisdiction to determine whether the birth mother’s consent is valid, whether the potential adoptive parents are qualified, and whether the adoption is in the child’s best interest. Because of its preliminary nature, this court does not have jurisdiction over the transfer order pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A). Nor does this court have jurisdiction pursuant to rule 9.030(b)(1)(B), which authorizes review of “non-final orders of circuit courts as prescribed by rule 9.130.” Rule 9.130(a)(3)(C)(iii) authorizes review of orders determining custody in family law matters, but, as we have observed, this order did not disturb the legal or physical custody of the child.
*1217 The only potential appellate jurisdiction for this order derives from rule 9.130(a)(4), which states, “Other non-final orders entered after final order on authorized motions are reviewable by the method prescribed by this rule.” The circuit court’s order relinquishing jurisdiction was entered following a dependency order, which could be considered final for some purposes. However, a crucial issue in this context is whether the order was entered “on authorized motion,” which we construe as a term of art, much as it is used in the rendition rule, Fla. R.App. P. 9.020(h)(1), which lists specific motions that will suspend rendition until the court files a written order disposing of the motion as to any party against whom relief is sought. All of the authorized motions enumerated in the rendition rule are directed to some aspect of true finality in the original order or judgment; such motions seek rehearing, new trial, alteration or amendment of the judgment, arrest of judgment, correction of a sentence, and the like. In this case, the order on the motion to relinquish jurisdiction to another circuit court division did not alter any final aspect of the dependency order; in fact, the court declined to do anything that would alter the status quo other than to transfer the case to another division. We have searched the juvenile, civil, and family law rules of procedure but have discovered nothing suggesting that this motion would be considered “authorized” for purposes of rule 9.130(a)(4).
In D.K.B. v. Department of Children & Family Services (In the Interest of R.B.), 890 So.2d 1288 (Fla. 2d DCA 2005), this court discussed at some length the ap-pealability of an order entered during a termination of parental rights proceeding. Although this court initially treated the order as an authorized appeal from a non-final order pursuant to rule 9.146, upon further reflection, the court held as follows:
Rule 9.146(a) specifies that appeal of dependency and termination orders shall be as in civil cases except as modified by rule 9.146. Rule 9.146 does not attempt to modify rule 9.130. Rule 9.130 is clearly written to regulate the appeal of nonfinal orders. The civil order on appeal in this case is not included in subsection (3) of rule 9.130. Thus, we conclude that rule 9.146 provides no exception or expansion to the appeals permitted under rule 9.130.
Id. at 1289. Because this court lacked jurisdiction over the nonfinal order in D.K.B., it treated the appeal as a petition for common law certiorari and denied it. We will treat this appeal likewise, with the same result.
Availability of Certiorari Relief
This opinion has already focused on all that the order being reviewed does not do, and we have discussed the discretionary aspects of transferring a case from one circuit court judge to another judge in that circuit. Such matters are beyond the scope of appellate court jurisdiction. In the event that the judge of the division to which the case is transferred does something that might prove contrary to the essential requirements of law, such as terminating the parental rights of either parent and transferring the child to the custody of Heart of Adoptions without following the statutory mandate that the dependency case takes precedence, then this court might accept certiorari. As this order stands, however, we deny the Department’s and A.M.’s petitions for certiorari.
Appeal and Petitions Filed by the Birth Mother and Heart of Adoptions Directed Toward the Court’s February 2006 Order Reversing its December 2005 Order
In February 2006, upon the Department’s motion to stay, the circuit court decided that it had “inherent jurisdiction to set aside anything that [it] believefd] *1218 was done in error,” found that its December 2005 order was erroneous, and quashed it. The court’s intent was to resume — or continue — its jurisdiction over the dependency matter. Because the December 2005 order was not appealable, the circuit court never lost jurisdiction to act in the dependency case, except to the extent that the circuit court’s administrative rules would prevent the court from revisiting a case that it had apparently transferred to another division. Rather, the circuit court was appropriately recognizing its continuing authority to protect the dependent child. Circuit courts retain “inherent and continuing jurisdiction to entertain matters pertaining to child custody and to enter any order appropriate to a child’s welfare.” B.Y. v. Dep’t of Children & Families, 887 So.2d 1253, 1256 (Fla.2004).
After the circuit court entered the February 2006 order, the Department filed a notice in this court recognizing that its appeal was moot. Unfortunately for the appellate process, however, the birth mother’s appeal of the February 2006 order caused the Department and A.M. to resist dismissal of their appeals. The thrust of the Department’s and the biological father’s appeals was that the unintended legal effect of the circuit court’s December 2005 order was to deprive A.M. of substantial legal rights without due process of law and to damage the Department’s ability to make meaningful and effective case plans for the reunification of dependent children and their parents. When the birth mother appealed the circuit court order that would have effectively alleviated the Department’s alleged need for appellate review, the effect was to bring the same controversy, issues, and potential collateral legal consequences before this court in a different context. Ironically, the birth mother attempted to dismiss her appeal of the February 2006 order in favor of pursuing certiorari relief, and in June 2006, this court converted case number 2D06-1037 into a petition for cer-tiorari. By that time, however, an appellate quagmire had developed.
In any event, the Circuit Court of the Twelfth Judicial Circuit was not divested of jurisdiction by the pendency of the petitions for certiorari in this court.
Certiorari is an original proceeding in this court. See Fla. R.App. P. 9.030(b)(3). It has no effect on the jurisdiction of the circuit court unless a stay of the proceedings is granted. Although Florida Rule of Appellate Procedure 9.130(f) specifically prohibits the circuit court’s entry of a final judgment during the appeal of a nonfinal order, no similar' rule exists when a nonfinal order is challenged by way of certiorari.
Curry v. State, 880 So.2d 751, 755-56 (Fla. 2d DCA 2004).
The circuit court should not have attempted to transfer the case in the first place until it made the required best-interest determination under section 63.082. Because we hold that the court acted appropriately when it reasserted its jurisdiction by reversing itself, we deny the birth mother’s and Heart of Adoptions’ petitions directed to the February 2006 order.
Concluding Thoughts
Another year has passed from the time that the circuit court entered the December 2005 order challenged by the Department and the unmarried biological father — an order that did nothing to affect any party’s rights. All of these appeals and petitions[2] have thwarted section 39’s stated legislative intent to insure that J.T.’s permanent placement with her biological or adoptive family is achieved within one year of her placement into foster care. § 39.001(l)(h). The Florida Legisla *1219 ture has also decreed that “[i]f a child will not be reunited with a parent, adoption, under chapter 63, is the primary permanency option.” § 39.621(6) (emphasis added). Ultimately, if the adoption does not proceed pursuant to chapter 63, section 39.812(5) specifically provides that the “petition for adoption must be filed in the division of the circuit court which entered the judgment terminating parental rights.” In that instance, neither the birth mother nor the unmarried biological father will have standing concerning the choice of adoptive parents. They are “not entitled to notice of the proceeding and are not entitled to knowledge at any time after the order terminating parental rights of the whereabouts of the child....” Id.
There is no suggestion in this record that the unmarried biological father desires to parent this child; therefore, a focus on his rights contravenes the intent behind the adoption statutes. Even if he were attempting to assert his parental rights, the legislature has specifically described an unmarried biological father’s interest in his child as “an inchoate interest that acquires constitutional protection only when he demonstrates a timely and full commitment to the responsibilities of parenthood, both during pregnancy and after the child’s birth.” § 63.022(l)(e).
Petitions for certiorari in case numbers 2D06-296 and 2D06-416 denied; petition for writ of certiorari in case number 2D06-1037 denied; petitions for writ of prohibition, mandamus, or certiorari in case numbers 2D06-1220 and 2D06-1523 denied.
NORTHCUTT and SALCINES, JJ., Concur.

. J.T. was placed in her current foster home after a brief initial period in another placement.

. We recognize that this court's initial treatment of the Department’s and A.M.’s cases as *1219 nonfinal appeals, as well as our internal procedure that delayed decision until all of the cases were perfected, contributed to the delay.