# Third District Court of Appeal

## State of Florida

Opinion filed August 31, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1111
Lower Tribunal No. 15-16030
_____

**Florida Department of Children and Families,**
Appellant,

vs.

**M.N., the Mother, and O.C.S., the Father,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Martin Zilber, Judge.

Karla Perkins, for the Department of Children and Families, for appellant.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Kevin Coyle Colbert, Assistant Regional Counsel; Thomas Butler, for appellees.

Before SHEPHERD, SALTER and EMAS, JJ.

SALTER, J.

The Department of Children and Families (DCF) appeals a trial court order terminating DCF's supervision over two children—K.C.S., an infant, and K.C.N., a nine-year-old—and closing the case. We reverse and remand the case for further proceedings.

The Proceedings in Florida

The appellees are the mother, M.N., and the father, O.C.S., of the two children. The parents were originally from Puerto Rico and moved to Miami in May 2013. In October 2015, DCF filed a petition to shelter both children when the infant tested positive for cocaine at birth and the mother admitted using cocaine a week before the birth. The father also tested positive for cocaine.

The older child, K.C.N., missed 53 days of school in 2014-15. The trial court granted the shelter petition. In November 2015, DCF filed a verified petition for dependency, and each parent consented to an adjudication of dependency. The court placed the children in the temporary custody of a maternal aunt residing in Puerto Rico, under the protective supervision of DCF. The paternal aunt was directed to supervise the parents' visits with the children.

A case plan was filed in November 2015, with the primary goal of reunification and the concurrent goal of adoption. The mother's tasks included parenting classes, individual therapy, and substance abuse evaluation and

2

treatment.  The father's tasks included parenting classes and substance abuse evaluation and treatment.  The trial court approved that case plan.

DCF's judicial review social study report was filed on February 24, 2016.  The case manager reported that the paternal aunt was concerned about the lack of parent-child communication, that the parents were not engaging in the services to which they were referred, and that neither parent was in compliance with case plan tasks.

An updated judicial review social study report was filed the following month.  The case manager reported that the mother had advised her that both parents were leaving for Puerto Rico.  The case manager provided her with referrals for services in Puerto Rico.  Although the mother advised that she would stay in contact with the case manager, she did not.  This was the last contact with either parent.  The court directed DCF to look into starting a case in Puerto Rico to supervise the children.

In April 2016, the court terminated DCF's supervision in an order that provides:

> [T]he Court hearby [sic] terminates supervision and closes the case over the Department's objection.  The children were placed with their paternal aunt, [E. B.-S.,] on November 17, 2015 in Puerto Rico.  It is the Court's finding that this matter be transferred to Puerto Rico and if not transferred, it should be closed with Custody remaining with the Paternal Aunt in Puerto Rico.  The Department objects to the closure and finds that it is in the Children's Best Interest for the case to remain open.  At the time of the entry of this Order, the Parents [sic]

3

whereabouts are unknown and they have not engaged in any of their case plan tasks.

DCF filed a motion for rehearing arguing that there was no mechanism to transfer the case, and that the witnesses reside in Miami. DCF explained that it wanted to file a termination of parental rights (TPR) petition to allow the children to be adopted. DCF assured the court that it had jurisdiction over children it placed in Puerto Rico and could order their return.

The trial court scheduled a hearing for the following month, advising DCF that the court would close the case if the parents' whereabouts were still unknown at the time of the further hearing. At that next hearing, the parents were not located and had not complied with any case plans. DCF argued it was not in the children's best interest to close the case. DCF requested a judicial review to find the parents in non-compliance, terminate their rights, and proceed to adoption. The court announced it would not conduct adoption proceedings for out-of-state children. The court then denied the motion for rehearing. DCF's appeal followed.

Analysis

The standard of review of a question of law in a dependency proceeding— here, the application of the Uniform Child Custody Jurisdiction and Enforcement Act, sections 61.501-.542, Florida Statutes (2016) (the "UCCJEA")—is de novo. Arjona v. Torres, 941 So. 2d 451, 454 (Fla. 3d DCA 2006). Determinations regarding the transfer of a case to another jurisdiction based on the "inconvenient

4

forum" provisions of the UCCJEA are a matter of the trial court's discretion. K.I. v. Dept. of Children & Families, 70 So. 3d 749, 753 (Fla. 4th DCA 2011).

In the present case, the record establishes that the trial court acquired, and had continuing, jurisdiction over the case and children because Florida is the children's home state under the UCCJEA. Section 61.503 (7) defines "home state" as:

> (7) "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding. In the case of a child younger than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned.

The older child had been living in Florida with his parents for six consecutive months prior to the commencement of the proceedings, and the baby was in Florida and only a few days old at that time. Once DCF commenced the dependency proceedings in the children's home state, the trial court had continuing jurisdiction under the statute. B.Y. v. Dept. of Children & Families, 887 So. 2d 1253 (Fla. 2004).

That jurisdiction carries with it the duty to "ensure that the best interests of the children are advanced," id. at 1256, a duty that "exists during the dependency proceedings, and continues through the adoption proceedings." Id. This duty exists to carry out the legislature's goal that all dependency proceedings are to seek to achieve permanency for the children. §§ 39.001(h), .621, Fla. Stat. (2016). The

5

trial court's dismissal of the case without further provision for two children who had not reached permanency was inconsistent with that goal.

The trial court urged DCF to set up a referral of the children's cases to a social services agency in Puerto Rico so that the case could be transferred there. DCF was unable to accomplish this, and the record reflects that no case was opened by a court or social services agency in Puerto Rico when the Florida case was dismissed. Nonetheless, the trial court concluded that the children were in Puerto Rico and the parents could not be located in Florida, so that dismissal of the Florida case and a "transfer" of the case to Puerto Rico was warranted.

A Florida trial court does have the ability to transfer a case when it determines that another forum is more convenient. Section 61.520, "Inconvenient Forum," in subpart (1), permits a court of this state which has jurisdiction to decline to exercise its jurisdiction if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or a request by another court.

Under section 61.503(15), Puerto Rico is a "state" for purposes of the UCCJEA as enacted in Florida, though Puerto Rico itself has not enacted the UCCJEA. Section 61.520(3) specifically contemplates that the transferring court "shall stay the proceedings upon condition that a child custody proceeding <u>be</u>

6

<u>promptly commenced</u> in another designated state and may impose any other condition the court considers just and proper." (Emphasis added). This is essentially what the trial court sought to accomplish when it ordered DCF to inquire into starting an action in Puerto Rico.

Section 61.520(2) sets forth the matters to be considered as the trial court exercises its discretion to transfer a case to another jurisdiction:

(2) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(b) The length of time the child has resided outside this state;

(c) The distance between the court in this state and the court in the state that would assume jurisdiction;

(d) The relative financial circumstances of the parties;

(e) Any agreement of the parties as to which state should assume jurisdiction;

(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

7

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(h) The familiarity of the court of each state with the facts and issues in the pending litigation.

The record in the present case does not reflect the consideration of these factors, nor does the order of dismissal reflect findings adequate to permit meaningful appellate review. Accordingly, the order of dismissal must be reversed and the case remanded to the trial court for further proceedings.

The nature of those further proceedings will be shaped by the parties and the trial court, but on the present record two alternatives present themselves: (1) the trial court may authorize DCF to prosecute the TPR case to its conclusion in Florida, or (2) the trial court may conduct a hearing and enter findings regarding the "relevant factors" set forth in section 61.520(2), before making a determination whether or not the Florida case should be formally transferred to Puerto Rico.

Reversed and remanded for further proceedings consistent with this opinion.

8